**Howard B. WEAVER and Mary Lou Weaver, as Trustees of The Howard B. Weaver and Mary Lou Weaver Revocable Trust, Plaintiffs–Respondents,**

v.

**Jay Terry HELM, and J.T. Helm and Wilma I. Helm, Defendants–Appellants.**

No. 20599.

Missouri Court of Appeals,
Southern District.
Division One.

March 26, 1997.

802

Michael C. Dawson, El Dorado Springs, for appellant.

J.D. Baker, Baker & Dull, Osceola, for respondent.

PREWITT, Judge.

This appeal arises from a boundary-line dispute between Howard B. and Mary Lou Weaver (collectively referred to as "the Weavers") and Jay Terry Helm, and J.T. and Wilma Helm (collectively referred to as "the Helms"). The estimated area of the proper-

ty in question is three acres, and runs for approximately ½ mile between the properties. The Weavers, Plaintiffs–Respondents herein, claim ownership by adverse possession. The Helms, Defendants–Appellants herein, contend that they hold record title of the property, based on a survey conducted after the dispute arose. The trial court entered findings and conclusions, finding that the Weavers (Plaintiffs–Respondents) were entitled to the portion of the disputed property by adverse possession. The Helms (Defendants–Appellants) appeal.

At the time Plaintiffs took possession of their property in 1952, there was an existing fence along the northern boundary of their property. By mutual agreement, Plaintiffs and Defendants' predecessor in title erected a new fence along the eastern half of the one-half mile of fence line that separated the two properties. The new fence was placed along the same line as the old fence and was built with hedge posts at the ends, oak posts in the middle, and three strands of barbed wire. The remaining half of the fencing was repaired. It was agreed that this fence line was to be the boundary line between the two properties.[1]

Subsequent rebuildings and replacement of the fencing maintained the fence line in the same approximate location. Defendants–Appellants purchased the property north of the Plaintiffs' in 1966. In the mid–1970's, Defendants rebuilt a section of fencing on the western end of the fence line. It was installed in approximately the same location and remained there until it was destroyed by Defendant Jay Terry Helm in 1992 and 1993, and relocated to the south of the old location.

In June, 1992, Defendant–Appellant Jay Terry Helm removed a 600–650' section of the fence pursuant to a request by Jay Terry Helm that Howard Weaver permit Helm to install a brace pole for utilities on Weaver's side of the fence, to which Weaver agreed. Replacement of the fence was discussed between the parties and Jay Terry Helm suggested to Howard Weaver that a new fence

---

**1.** There is no contention that the boundary line was changed by this agreement. On agreements to establish a disputed line, see *Gillenwaters*

*Bldg. Co. v. Lipscomb,* 482 S.W.2d 409, 412 (Mo. 1972).

line would be established, per a new survey, along a line further south of the old boundary line. In response to Helm's plan to move the location of the fence, the Weavers contacted their attorney to inform Helm of their objection to relocating the fence. A letter dated July 29, 1992, was sent to Jay Terry Helm by the Weavers' attorney. In August, 1992, Mr. Weaver, with the help of a friend, replaced that section of fence destroyed by Jay Terry Helm. When Jay Terry Helm observed the replacement of the new fence along the old fence line, he protested to Weaver, insisting it be placed along a line south of the old line, according to a survey which he had ordered. Nevertheless, Weaver finished replacing the fence, along the old line. The new section was built with steel posts approximately ten feet apart with four strands of barbed wire.

In the spring of 1993, Defendant–Appellant Jay Terry Helm had the entire fence line, approximately ½ mile of fencing, bulldozed down, including the section that Weaver had installed the previous summer. Another letter was sent by the Weavers' attorney, dated May 17, 1993, demanding that Helm install a new fence to replace the one he had destroyed, in order that the Weavers might pasture their cattle. The letter also demanded that the new fence be installed at the same location as the old fence.

Helm installed a new fence along a different boundary line to the south of the old fence line which he determined based upon the results of a survey he had hired. The new fence line was located some six feet south of the old fence line on the east end of the boundary line, and 86 feet south of the old fence line on the west end of the boundary line. At mid-point, the new fence was 46 feet south of the old fence line. In the process of the bulldozing and relocation of the fence line, the Weavers contend that an access lane, through which they could enter the back portion of their property, was rutted and littered with brush, making access to the back portion difficult.

■ Because this is a court tried case, we follow the dictates of Rule 73.01. Thus, we review both the law and the evidence giving due recognition to the superior position of the trial court to judge the credibility of the witnesses. *Teson v. Vasquez*, 561 S.W.2d 119, 128 (Mo.App.1977). The judgment must be sustained unless it is without substantial evidentiary support, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ To establish title by adverse possession, one must prove by a preponderance of the evidence that possession was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years. *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo. App.1996); *Witt v. Miller*, 845 S.W.2d 665, 667 (Mo.App.1993).

■ Hostile means a possession antagonistic to claims of all others, with an intent to occupy as one's own. *Kitterman*, 924 S.W.2d at 876; *Witt*, 845 S.W.2d at 668. Under the "hostile" element, even if the possessor mistakenly believed he had title and occupied the land as his own, the element is satisfied, i.e., he must intend to occupy as his own and there is no requirement for adverse possession that he be holding title to take away from a true owner. *Kitterman*, 924 S.W.2d at 876.

■ "Open and Notorious is satisfied by visible acts of ownership exercised over the premises," such as maintaining and improving the property. *Id.* Actual depends on the nature and location of the property and may be a use expected from that nature and location. *Id.*

■ Exclusive possession means the claimant holds the land for the claimant only and not for another, for example using the land as his or her own backyard and not allowing others to so use the property. *Id.* The ten years of possession must be consecutive years and need not be the ten years just prior to the filing of the law suit, but once the period has run, the possessor is vested with title and the record owner is divested. *Id.*

■ Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case

are considered with the view that every property may be unique and each case must be decided in light of its own unique circumstances. *Id.* Much depends on the location, the character and the use to which the land in question may reasonably be put. *Id.* The acts which establish possession vary from case to case and the nature of the area in question and the surrounding property. *Id.* at 878; *Denton v. Ipock,* 652 S.W.2d 290, 292 (Mo.App.1983).

In Point One, Appellants contend that:

The trial court erred in finding that Plaintiff is the owner of a tract of land by adverse possession in that Plaintiff failed to prove all elements of the cause of action in adverse possession by sufficient competent evidence because Plaintiff did not show he held the subject real property hostile to the rights of Defendant or anyone else.

■ For more than forty years, Plaintiffs have been in the actual possession of the property lying south of the old fence line, pasturing cattle, cutting wood, and hunting on this property. To prevent trespassing, they had the land posted near the highway entrance. Ownership of the land south of the old fence was not disputed from 1951 until 1992.

■ The definition of hostile includes "antagonistic to the claims of all others ... with the intent to possess the land as his own." *Witt,* 845 S.W.2d at 668. However, hostility does not imply animosity. *Id.* The intent to take away from the true owner is not relevant to the issue of hostile possession. It is the intent to possess not the intent to take away from the true owner that governs. *Id.*

■ The essential requirement of adverse possession is that the possessor's occupancy be truly adverse and in opposition to the title of the record owner. *Teson,* 561 S.W.2d at 125. The claimant must occupy the particular piece of property intending to possess it as his own. His occupancy must be in defiance of, not in subordination to, the rights of others. *Id.* at 125–26. An adverse possessor does not recognize the authority of the record titleholder to permit or to prevent his continued use of the property claimed. *Id.* at 126. Such adversity is shown by satisfaction of the five elements of adverse possession. *Id.*

■ For possession to be hostile it is neither required that the true owner have knowledge of the hostile claim of right or that the claimant intend to deprive him of title. *Id.* at 127. The possession must be opposed and antagonistic to the claims of all others, i.e., the claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another. *Id.* Furthermore, the claim of right or ownership must be unequivocal. *Id.*

■ In short, the determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line. *Krell v. Davidson,* 694 S.W.2d 774, 777 (Mo.App.1985); *State v. Shain,* 348 Mo. 119, 152 S.W.2d 174, 176 (1941); *Bell v. Barrett,* 76 S.W.2d 394, 396 (Mo.1934). One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership. *Krell,* 694 S.W.2d at 777; *Shain,* 152 S.W.2d at 177. The questioned element was sufficiently shown. Point one has no merit.

Point Two asserts:

The trial court erred in finding that Plaintiff held title to the subject real estate by adverse possession in that the Plaintiff failed to adduce sufficient competent evidence of the precise location of the boundary line of said real estate claimed because absent such proof the judgment of the court rests upon speculation and conjecture.

■ An adverse possession suit cannot be sustained unless the claimant can establish the precise boundaries of the property claimed, and absent such proof, the judgment is void and rests on speculation and conjecture. *Kitterman,* 924 S.W.2d at 877. One overriding requirement to establish adverse possession to a particular piece

of property is that the precise location of the land claimed be identified in such a way that the boundaries may be ascertained and recognized. *Denton,* 652 S.W.2d at 292 (Mo. App.1983); *Teson,* 561 S.W.2d at 127. Absent proof by claimant of the exact location of lands claimed, any judgment would be void, because it would rest entirely on speculation and conjecture. *Teson,* 561 S.W.2d at 127.

██ Defendant Jay Terry Helm had destroyed the old fence and much of the area immediately surrounding it when he hired a bulldozer to clear the area of the old fence in 1993. In testimony elicited from Weaver's son-in-law, Rich Loehr, he described the variances in the location of the old fence in relation to the new fence, basing his description on the measurements contained in Mr. Freeman's survey, on which Defendant Helm had relied when relocating the new fence line.

Introduced in evidence and filed here was a survey by the Hickory County surveyor, showing the "existing fence line." Also introduced, but not before us, is a "drawing" prepared by the surveyor, which he described as "a measurement or a depiction of each point measured along the line. From the first point measured at the east to the termination point at the west along the fences at various points." Appellants offered this exhibit, saying, according to the transcript, that it was "a graft [graph?] depicting how the old fence line, the 1952 fence line would look grafted out for those markings that [the surveyor] did in his survey." Respondents contend, based upon these exhibits and testimony, that the legal description in the judgment had a proper basis and was correct.

The judgment includes a precise legal description of the area in dispute. We start with the presumption that the court's judgment is correct and appellant has the burden to show otherwise. *Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control,* 893 S.W.2d 835, 838 (Mo.App.1995).[2]

At the close of evidence, the trial court permitted the parties to withdraw their exhibits. Appellant's exhibit, the "drawing," was not filed here. As it was not, we are to presume it supports the judgment. *Gage v. Morse,* 933 S.W.2d 410, 424 (Mo.App.1996) (when exhibits are omitted from the transcript and are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant). The record does not establish that the description in the judgment was not based upon the evidence. Point two is denied.

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.

**2.** At the close of evidence, the trial judge proposed, in the event he found for Plaintiffs, that the parties would share the expense in appointing a master to determine a legal description for the location of the old fence. The parties indicated in oral argument that no master was appointed.