Oscar E. WARREN and J. Faye Warren, Plaintiffs–Respondents,

v.

Charles TOM and Wilma Tom, and Charles Dwayne Tom and Kathy Lynn Campbell, Defendants–Appellants.

No. 21265–1.

Missouri Court of Appeals, Southern District, Division One.

June 2, 1997.

John Wiles, West Plains, for defendants–appellants.

W. Swain Perkins, Thayer, for plaintiffs–respondents.

BARNEY, Presiding Judge.

Appellants Charles Tom, Wilma Tom, Charles Dwayne Tom and Kathy Lynn Campbell (Defendants) appeal from a final judgment of the Circuit Court of Howell

County, Missouri, entered against them and in favor of Respondents Oscar W. Warren and J. Faye Warren (Plaintiffs) arising from a boundary line dispute.

Plaintiffs purchased a tract of land in 1972, located along the western side of U.S. Highway 160 in Howell County, Missouri. In 1973, Plaintiff Oscar Warren was asked by Defendant Charles Tom if he would be interested in selling about one acre of the tract originally purchased by Plaintiffs. Plaintiff Oscar Warren told Defendant Charles Tom that he would be interested in selling the south portion of Plaintiffs' property that bordered U.S. Highway 160.

On February 26, 1973, the following described real property located in Howell County, Missouri, was conveyed by general warranty deed from the Plaintiffs to the Defendants:

A part of the NE 1/4 of the SE 1/4 of Section 31, Township 24, Range 8 lying west of Highway 160, more particularly described as follows: Beginning at the point where the west right of way line of said Highway 160 intersects the south line of said NE 1/4 of SE 1/4 of said Section 31, thence in a northerly direction along the west right of way line of Highway 160 a distance of 210 feet, thence west parallel to the south line of said NE 1/4 of SE 1/4 of Section 31 a distance of 300 feet, thence in a southerly direction parallel to said highway a distance of 210 feet, to the south line of said NE 1/4 of SE 1/4, thence east along the south line of said NE 1/4 of SE 1/4 300 feet to the point of beginning.

Subject to easements and restrictions of record.[1]

Thereafter, the parties lived in relative harmony until 1994 when this dispute arose over the location of the boundary line between the two parcels of land.

In 1994, Plaintiffs decided to build a new fence along the boundary line with the north line of Defendants' deeded property. They commissioned a registered land surveyor to determine the exact location of the boundary line on the ground. After determining the exact boundary line, the Defendants protested the land surveyor's findings. The Plaintiffs then brought this action to determine the boundary line and a court-tried case ensued.

The crux of the dispute appears to center on the true location of the south boundary line of what was Plaintiffs' property, just *prior* to the conveyance of the 210 × 300 parcel of land to Defendants.

Both parties admit that there was an old fence line in the south portion of Plaintiffs' property, from whence a measurement was taken so as to determine the projected north boundary line of the parcel of land to be conveyed to Defendants.

As more fully described below, Plaintiffs contend that the old fence line did not lie on the true south boundary line of their tract of land, from which they were conveying to Defendants. Rather, they maintain that the old fence line was some 30 feet north of their true boundary line. Further, at the time that Plaintiff Oscar Warren and Defendant Charles Tom were discussing the boundaries of the projected conveyance, Plaintiffs assert that Defendant Charles Tom was informed that Plaintiffs' true boundary line lay south of the old fence line and they both agreed to "step-off" a measurement of 210 feet going north from the old fence line, just to get a "general idea" of where the projected north boundary line was to be located.

Defendants, however, maintain that the old fence line was in fact the true boundary line of Plaintiffs' real property, prior to the conveyance, and that Plaintiff Oscar Warren and Defendant Charles Tom agreed to measure the 210 feet from that point by a measuring tape, and placed corner posts on three of the four points of the projected conveyance.

The trial court determined that the true boundary line between Plaintiffs' north parcel of land and Defendants' adjoining south parcel of land was the boundary line, in consonance with the legal description set forth in the general warranty deed executed

---

1. We have interpolated the metes and bounds description of the February 26, 1973, warranty deed from "Annex B" of Plaintiffs' petition, which in their answer to Plaintiffs' petition, Defendants admitted.

by Plaintiffs on February 26, 1973. In that deed, Plaintiffs conveyed to Defendants a parcel of land which measured approximately 210 feet north and south and 300 feet east and west. The trial court's judgment, therefore, precluded the Defendants' claim of title to a disputed 30 by 300 foot strip of land lying north of Defendants' deeded north boundary line.

Defendants raise three points of trial court error: (1) in determining the location of the boundary line between the Plaintiffs' and Defendants' parcels of land; (2) in finding that no ambiguity existed in the warranty deed from Plaintiffs to Defendants, thereby ignoring Defendants' testimony regarding the true intentions of the parties at the time of the conveyance; and (3) in finding, contrary to the weight of the evidence, that Defendants did not acquire title to the disputed property by adverse possession.

## I.

■ An appellate court is to sustain a judgment entered in a court-tried case unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Landers v. Huffman*, 914 S.W.2d 394, 396 (Mo.App.1996) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We defer to the trial court on questions of credibility of witnesses and the choice between conflicting evidence. *Landers*, 914 S.W.2d at 396 (citing *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988)); *see also* Rule 73.01(c)(2).[2] A court should exercise the power to set aside a decree or judgment on the ground that it is against the manifest weight of the evidence with caution. *Murphy*, 536 S.W.2d at 32.

## II.

■ We review Defendants' Points One and Two together because they are inseparably related. Defendants argue court error in determining the location of the property boundary line and in determining that no ambiguity existed in the February 26, 1973,

deed which would have required the trial court to look outside the deed and examine the intention of the parties. *See Homan v. Hutchison*, 817 S.W.2d 944, 949 (Mo.App. 1991).

■ An accurate description of the disputed real property which Defendants claimed title to was not available for this Court's review. Indeed, we were without the benefit of any of the exhibits used during the trial.

When exhibits are omitted from the transcript and are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant. *Gage v. Morse*, 933 S.W.2d 410, 424 (Mo.App.1996).

As we understand it, however, the property Defendants claimed title to was a strip of land approximately 30 feet wide that runs about 300 feet west from U.S. Highway 160, and that lies north of the north boundary line of Defendants' property, as described in the February 26, 1973, deed.

Consistent with the deed of February 26, 1973, the judgment of the trial court found a common point of beginning for the boundary line separating the two parcels of land. The court described it as having commenced at a point on the west right-of-way line of Highway 160, a distance of 210 feet from where the west right-of-way line intersected the south boundary line of the Northeast Quarter of the Southeast Quarter of Section 31 "thence West parallel with the South boundary line of said Northeast Quarter Southeast Quarter a distance of 300 feet...."

The trial court's judgment necessarily precluded Defendants' claim of title to the strip of land north of the designated boundary line between the parties' property.

■ Defendants argue that the deed was ambiguous and that the trial court should have ascertained the intention of the parties as of the time of the original conveyance. "In the absence of ambiguity, the intention of the grantors must be determined

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (1996), unless otherwise

indicated.

by what the deed actually says, not what they might have said had they undertaken to explain their intentions." *Elmore v. Elmore*, 557 S.W.2d 910, 911 (Mo.App.1977); *see also Jamieson v. Jamieson*, 912 S.W.2d 602, 605 (Mo.App.1995); *O'Neal v. O'Neal*, 703 S.W.2d 535, 538 (Mo.App.1985). However, the trial court did in fact receive evidence of what each party intended at the time of the conveyance. It did so, apparently, based on the pleadings of the parties which revealed a latent ambiguity in the description of the land in the February 26, 1973, deed.

> A latent ambiguity in the description of land in a deed or mortgage is an uncertainty not appearing on the face of the instrument, but which is shown to exist for the first time by matter outside the writing, when an attempt is made to apply the language to the ground.

*Becker v. Workman*, 530 S.W.2d 3, 6 (Mo. App.1975). "Such an ambiguity, it is practically agreed by all the cases, may be explained and removed by parol evidence; having been revealed by matter outside the instrument, it may be removed in the same manner." *Id.*

There was conflicting testimony presented at trial with regard to what the original agreement was relating to the boundary line separating the two parcels of land.

As best as we can discern from the record, without having benefit of the exhibits, Plaintiff Oscar Warren testified that there was no fence on the north line of the parcel of land that was deeded to Defendants by the Plaintiffs.

Plaintiff Oscar Warren testified that "there was a fence along the south [part of Plaintiffs' property]." He stated that his predecessor in title told him that the "fence was not on the [south] line [of Plaintiffs' property], [and that the fence] was north of the line" and acknowledged that the true boundary would have been closer to [Defendant Charles] Tom's house and property than was the fence. It was Plaintiff Oscar Warren's contention that the true south boundary line of Plaintiffs' property was south of the old, existing fence.

Plaintiff Oscar Warren further testified that he and Defendant Charles Tom agreed to just get a "general idea" of where the north boundary line was by "step[ping] it off" from the south fence and that if in the future either party wanted a survey, that party would shoulder the expense.

Defendant Charles Tom testified that when he purchased the property from Plaintiffs there was no discussion regarding a survey and that "we measured from the fence," which he believed to be along the north line of the property he then owned, prior to acquiring the parcel from Plaintiffs. Defendant Charles Tom stated that "[w]e used a hundred-foot steel tape." He also stated that the northeast, northwest and southwest corners were established and that "Oscar Warren drove all three [corner] pipes."

Ralph Riggs testified that in late 1994 he conducted a land survey to determine the boundary line between Plaintiffs' and Defendants' property at the request of Plaintiffs. Mr. Rigg's survey was conducted before this dispute arose. The parties stipulated to Mr. Rigg's qualifications as a registered land surveyor. Mr. Riggs testified that he relied on the deed which transferred the entire tract to Plaintiffs in 1972, prior government surveys he located at the County Recorder's Office, and the deed of February 26, 1973, conveying the property from Plaintiffs to Defendants to determine the boundary line separating each party's property. He testified that in his professional opinion the south boundary line of Defendants' deeded property lay 30 feet south of the fence line from whence the parties began their measurement. Therefore, the true boundary line between the two parcels of real property was to the south of the disputed area by 30 feet.

There was also testimony from Willard J. Schnurbusch, a registered land surveyor, who testified on behalf of the Defendants. On cross-examination, Mr. Schnurbusch revealed that he did not actually conduct a land survey on the property in question, and that his opinion as to the boundary line was based merely upon a review of the deeds and of the survey conducted by Ralph Riggs.

Where, as here, Defendants attack the judgment based on the sufficiency of the evidence, we accept as true the evidence and inferences from the evidence that are favorable to the trial court's judgment and disregard contrary evidence. *See Bland v. Schubert*, 941 S.W.2d 24, 27 (Mo.App.1997). We also give considerable deference to judgments based on evidentiary and factual evaluations made by the trial court. *Id.* Furthermore,

> [i]n [a] court-tried case, credibility of the witnesses and the weight to be given their testimony [is] a matter for the trial court, which [is] free to believe none, part or all of the testimony of any witness. On appeal [of] a court-tried case, an appellate court defers to the trial court on factual issues because it is in a better position to not only judge the credibility of witnesses directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. We assume the trial court believed the testimony consistent with its judgment.

*Id.* (citing *Matthews v. Moore*, 911 S.W.2d 664, 668 (Mo.App.1995)).

Plaintiff Oscar Warren's testimony, and the expert testimony from Ralph Riggs, constituted sufficient substantial evidence to support the trial court's judgment. There is nothing in the record of this case that would require this Court to disturb the trial court's judgment. Points One and Two are denied.

### III.

In Defendants' Point Three, they argue that they acquired title to the disputed property by adverse possession and that the trial court's judgment finding against them was against the manifest weight of the evidence.

We initially note that neither party requested the trial court judge to make findings of fact or conclusions of law. On appeal of a court-tried case, the trial court is presumed to have made findings in accordance with the decree entered and its judgment will be affirmed under any reasonable theory supported by the evidence, particularly where the parties do not request findings of fact and conclusions of law and none are entered. *See Green Acres Enters., Inc. v. Freeman*, 876 S.W.2d 636, 638 (Mo.App. 1994).

To establish title by adverse possession, one must prove each of its elements by a preponderance of the evidence. The elements of adverse possession are: (1) hostile possession and under a claim of right; (2) actual possession; (3) open and notorious possession; (4) exclusive possession; and (5) continuous possession for a period of ten years.[3] *See Weaver v. Helm*, 941 S.W.2d 801, 804 (Mo.App.1997). The essential requirement of adverse possession is that the possessor's occupancy be truly adverse and in opposition to the title of the record owner. *Id.* at 805. The claimant must occupy the particular piece of property, intending to possess it as his or her own; the occupancy must be in defiance, not in subordination, to the rights of others. *Id.* An adverse possessor does not recognize the authority of the record titleholder to permit or prevent his or her continued use of the property claimed. *Id.* Such adversity is shown by satisfaction of the five elements of adverse possession. *Id.*

As previously noted, there was conflicting testimony during the trial of this case as to where the boundary line was. Both parties testified that they each made some use of the disputed strip of property between 1973 and 1994.

There was also testimony regarding the location of the boundary line from Ms. P.J. Swink, who testified on behalf of Plaintiffs. She testified that she lived with the Defendants, on and off, from about 1986 to 1990. Ms. Swink also testified that during the time she lived with Defendants, they were often concerned about where the boundary line really was. She testified that the Defendants were contemplating the construction of a building in the close vicinity of the disputed property. However, Ms. Swink testified that "there wasn't room out there to build another building, because there would only be like, maybe, like if you pulled a car into the [Plaintiffs'] side of [Defendants'] building, longways, there was maybe enough room to park a car longways." She further testified

---

3. *See* § 516.010, RSMo 1994.

that she often mowed the grass and that she was given instructions by the Defendants to not go too far north because they were not sure where the boundary line was with Plaintiffs' property. This testimony supports the trial court's judgment that the Defendants did not acquire title by adverse possession because Defendants could not exercise exclusive possession over property that they themselves could not identify. *See Weaver,* 941 S.W.2d at 805–06.

Moreover, there was little probative testimony from Defendants regarding their efforts to claim possession of the disputed property until this matter arose in 1994. Because Defendants did not exercise actual possession over the strip of property now in dispute, their theory fails. *See id.* at 805.

Little evidence was shown to support Defendants' theory that they acquired title to the disputed strip of land by adverse possession.

The trial court's judgment is not against the manifest weight of the evidence. *See generally Nix v. Nix,* 862 S.W.2d 948, 951 (Mo.App.1993). Based on the foregoing, we see no reason to disturb the trial court's judgment. Point Three is denied.

The judgment is affirmed.

GARRISON and PREWITT, JJ., concur.