HARRIS LAND DEVELOPMENT, L.L.C., a Missouri Limited Liability Company, Appellant,

v.

Norman FIELDS, Marjorie Fields, Fields Rentals, Inc., Bank of Crocker, and Tyce S. Smith, Trustee for Bank of Crocker, Respondents.

No. 25571.

Missouri Court of Appeals, Southern District, Division One.

July 27, 2004.

Edward D. Hoertel, Hoertel & Hoertel, Rolla, for Appellant.

W.H. Thomas, Jr., and Emily Woodward, Thomas, Birdsong & Mills, P.C., Rolla, for Respondents.

ROBERT S. BARNEY, Presiding Judge.

This is an appeal from a quiet title action grounded in adverse possession. Appellant Harris Land Development, L.L.C., ("Harris") is the owner of record of an 0.87 acre tract of land located in Roach's Second Subdivision, City of St. Robert, Pulaski County, Missouri. Respondents Norman Fields and Marjorie Fields ("the Fields") are the owners of record of real property that adjoins Harris' 0.87 acre

tract on the north and east.[1] In the trial below, Harris sought to quiet title by adverse possession to three tracts of land owned by the Fields, to-wit: Tract 1, consisting of approximately 0.07 acre, lying directly east of the 0.87 acre tract owned by Harris; Tract 2, consisting of approximately 0.48 acre, lying east of and running almost parallel to Tract 1; and Tract 3, a portion of real property located to the north of Harris' 0.87 acre tract.

A chat drive running, generally, north and south, traverses Tract 2, from U.S. Business Route I–44 to the northern portion of Tract 2. Also, branching out from the chat drive is an east/west chat drive that traverses out of Tract 2 through Tract 1 and into Harris' 0.87 acre tract.

An old red brick building, formerly known as the Hauck Chevrolet Building lies east of the chat drive on land owned by the Fields. The Fields operate a hardware store at this site. Between the chat drive and the Hauck Chevrolet Building there is an area of brushy vegetation.[2]

The trial court entered its findings of facts and conclusions of law quieting title to Tracts 1 and 2 *west* of the chat drive in favor of Harris. However, the trial court held that Harris' predecessors in title used the chat drive and that part of Tracts 1 and 2 lying *east* of the chat drive "permissively and not with the necessary hostility to others." The trial court also held that Harris "failed to show that its predecessors in title were in continuous and exclusive possession of Tract 3."

Harris now raises two points of trial court error. In its first point, Harris maintains the trial court erred in not quieting title in Harris to that portion of Tract 2 lying west of the eastern boundary of the chat drive or, in other words, the chat drive itself. In its second point, Harris maintains the trial court erred in not quieting title to Tract 3 in Harris. In each point of error, Harris maintains it met its burden of proof to quiet title by adverse possession.

"We will affirm the judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Conaway v. Fauller*, 972 S.W.2d 442, 444 (Mo. App.1998). "We accept as true all favorable evidence to the judgment and all reasonable inferences; all contrary evidence is disregarded." *Id.* "[W]e defer to the trial judge's superior ability to assess the credibility of the witnesses." *Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo.App. 1998).

■■■ "To establish title by adverse possession, one must prove by a preponderance of the evidence that possession was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years." *Weaver v. Helm*, 941 S.W.2d 801, 804 (Mo.App.1997). "Failure to establish one element of adverse possession will defeat the claim." *Conaway*, 972 S.W.2d at 444. "The claimant may tack his adverse possession to that of his prede-

---

1. Respondent Fields Rentals, Inc., is a Missouri Corporation *not in good standing*, which has been administratively dissolved by the Missouri Secretary of State. The Fields were the only shareholders of the defunct corporation. Respondent Bank of Crocker, a banking corporation, is the beneficiary named in a deed of trust originally executed by Respondent Fields Rentals, Inc.

2. The Fields own Lots 1 through 3 of Roach's second subdivision and the remainder of Lot 4 adjacent to Harris. Millard Hauck, through his corporation purchased this property in 1968 to operate Hauck Chevrolet. Hauck Chevrolet conveyed this property to Fields Rentals, Inc., in 1996, and Field Rentals, Inc., conveyed the property to the Fields in 1997.

cessors in title to establish the requisite ten years period." *Flowers,* 979 S.W.2d at 469.

■ "Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are considered with the view that every property may be unique and each case must be decided in light of its own unique circumstances." *Weaver,* 941 S.W.2d at 804–05. "Much depends on the location, the character and the use to which the land in question may reasonably be put." *Id.* at 805. "The acts which establish possession vary from case to case and the nature of the area in question and the surrounding property." *Id.*

■ As previously set out, Harris maintains in Point One that the trial court erred in not quieting title in Harris to that portion of Tract 2 lying west of the eastern boundary of the chat drive.

As proof of ownership by adverse possession of Tracts 1 and 2 and the chat drive in question, Harris showed that its chain of title to the 0.87 acre tract commenced in 1967 when Lloyd E. and Julia C. Mitchell ("the Mitchells") acquired the 0.87 acre tract of land and continued in uninterrupted possession until January 10, 2001, when the property was conveyed to Harris by the successors in title to the Mitchells. When Harris took title to the 0.87 acre tract of land, a one-story, frame house was located on the 0.87 acre tract and encroached onto Tract 1; a house trailer also encroached from the 0.87 acre tract onto Tracts 1 and 2.

The record shows that from August 7, 1967, until their deaths in 1998, the Mitchells resided in the one-story frame house. Commencing in 1973, the Mitchells placed trailers and a mobile home on the 0.87 tract of land and started a junk business in 1973. The Mitchells stored sale items for their junk business not only on the 0.87 acre tract, but also on Tract 1 and parts of Tract 2. They also parked motor vehicles near the chat drive in question.

When Harris purchased the 0.87 acre, left-over articles, rubbish, windows, lumber, tires, wheels, axles, and the like were located over the entirety of Tract 1 and parts of Tract 2. Leftover rubbish, burn piles, and the like also surrounded a garage located on Tract 3.

However, according to the testimony given by the Mitchells' daughter, Shirley Mitchell, the Mitchells never had any junk placed east of the chat drive in Tract 2. Additionally, she acknowledged that the vehicles that were parked on or near the chat drive were placed there temporarily, because there were other people using the chat drive. Furthermore, Lloyd Allen Mitchell, the Mitchells' son, testified by deposition that he had lived in the one story frame house with the Mitchells for some 25 years. He related Hauck's employees would use the chat drive "to come in and out of the back way, back there, to the garage. Not very often." He denied that his father ever had any junk on the east side of the chat drive.

Saliently, Lloyd Allen Mitchell also acknowledged that the Mitchells knew that the chat drive was owned by Hauck. When asked if the Mitchells had Hauck's permission to use the chat drive, Lloyd Allen Mitchell responded, "Yes, the[y] did. . . . I knew it by being around Millard Hauck and my dad. And he told us we could use it as long as we needed it." He related he overheard these conversations back in the "early '70s." He further stated that "[w]e never had stuff piled in the road, it was always on [the west] side of the road." Lloyd Allen Mitchell agreed that it would "be fair to say that the two parties, [the Mitchells] and the Haucks,

knew where the property lines were, and agreed to co-exist there."

Howard Doyle testified by deposition that he had worked for the Mitchells some eight to ten years earlier. He was assigned the task of widening the chat drive "just a little bit, and then we put rock on it and smoothed the rock out." Mr. Doyle related Millard Hauck was the owner "where the chat drive sits," and "Lloyd [Mitchell] told me that he didn't own the property." He related that Lloyd Mitchell told him that he had permission to use the road from Millard Hauck. Mr. Doyle also stated that "[h]e told me that he had permission to grade the road up, but not get it much wider than what it normally were [sic]" and "that he did have permission to use it."

■ Based on the foregoing, we cannot say that the trial court erred in finding that Harris' predecessors in title used the chat drive permissively. "Hostile means a possession antagonistic to claims of all others...." *Weaver*, 941 S.W.2d at 804. "Permissive use is contrary to a showing of adverse possession as hostile possession is lacking." *Ross Farms, Inc. v. Moore*, 873 S.W.2d 308, 309 (Mo.App.1994). Harris has failed to prove the "hostile" element of his adverse possession claim to that portion of Tract 2 lying west of the eastern boundary of the chat drive in question because of the permissive use of the chat drive by his predecessors in title. Point One is denied.

■ Turning now to Point Two, the trial court found that Harris failed to prove its predecessors in title were in continuous and exclusive possession of Tract 3. Har-

ris maintains that the possession of Tract 3 by its predecessors in title was continuous for nearly 25 years beginning in 1972 or 1973.

It is not entirely clear as to what constitutes the boundaries of Tract 3. The best we are able to discern is that Harris is claiming a tract of land 100 feet by 150 feet lying *north* of its 0.87 acre tract of land. The evidence as to the use and possession of the *entirety* of Tract 3 by Harris' predecessors in title is sparse.

The record shows that the Kenneth W. York and his wife lived in a trailer/mobile home located between a shed and the garage north of the 0.87 acre's north boundary line on what purports to be Tract 3 from 1967 to about 1980. But in our review of the record, no conveyance has been shown between the Yorks and Harris' predecessors in title specifically as relates to Tract 3.[3]

■ Shirley Mitchell testified that her parents rented the same trailer/mobile home that the Yorks had lived in to two GIs. Exactly when this took place has not been set out in the record, although we infer that these rentals took place after Kenneth W. York vacated the trailer/mobile home some time in 1980. Additionally, Lloyd Edward Mitchell, the Mitchells' other son, also lived in the trailer/mobile home from some time in 1993 or 1994 until the Mitchells' death in 1998. Before their death in 1998, the Mitchells also stored junk up to fifty feet north of the garage, but the distance from the north boundary line of the 0.87 acre to the garage is not set out in the record. We note that "[a]n

---

3. The record reveals that in 1973 Hauck Chevrolet, Inc., conveyed a 100 foot by 150 foot tract of land to Kenneth W. York and Juanita B. York, husband and wife, in what is the northern portion of *Harris' 0.87 acre tract*. In turn, Kenneth W. York, as surviving spouse, conveyed this same tract of land to Herbert Wayne Forthman and Carolyn Ruth Forthman, husband and wife, in 1982; the Forthmans then conveyed this same property to Harris' predecessor in title in 1983.

adverse possession suit cannot be sustained unless the claimant can establish the precise boundaries of the property claimed, and absent such proof, the judgment is void and rests on speculation and conjecture." *Weaver,* 941 S.W.2d at 805.

Additionally, the record is devoid of what use, if any, Harris made of Tract 3. At the conclusion of trial on June 3, 2002, the trial court observed that the photographs of various structures on Tract 3 appeared to show that the property was abandoned and unoccupied. "The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record." *Ross Farms, Inc.,* 873 S.W.2d at 309. The trial court was not compelled to accept Harris' witnesses' testimony of their activities in the area, even if uncontroverted. *Conaway,* 972 S.W.2d at 445.

Viewing the facts in a light most favorable to the judgment, we are not convinced that Harris sustained its burden of proof to show that Harris and its predecessors in title had been in the actual and continuous possession of the entirety of Tract 3 for the requisite period of time to vest title in Harris by adverse possession. *See Wykle v. Colombo,* 457 S.W.2d 695, 700 (Mo.1970). Point Two is denied.

The judgment of the trial court is affirmed.

PREWITT and GARRISON, JJ., concur.