**THOMASON INVESTMENTS, L.L.C.,**
**Plaintiff–Appellant,**

v.

**Charles CALL and Bonita Call,**
**Defendants–Respondents.**

No. 27883.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2007.

Gary W. Allman, Allman Ingrum & Wilson, P.C., Hollister, MO, for Appellant.

No brief filed by Defendants.

GARY W. LYNCH, Judge.

Plaintiff Thomason Investments, L.L.C. ("Thomason") appeals the trial court's judgment granting title to a 3.56–acre parcel of real property to Defendants Charles and Bonita Call, pursuant to their claim of adverse possession. The Calls did not file a brief. Thomason contends that the Calls failed to present substantial evidence to support a determination that they had adversely possessed the entire tract. We agree and reverse and remand with directions.

## 1) *Factual and Procedural Background*

The underlying action was brought following a dispute between Thomason and the Calls involving roadway easements and the property on which the Calls' home is located in Taney County. Thomason sued the Calls for specific performance under a purported "oral contract and agreement" providing that the Calls quit claim their easement rights to an existing twenty-feet-wide roadway in exchange for interest in an easement on a fifty-feet-wide roadway recently constructed by Thomason. The

Calls answered and counterclaimed, requesting injunctive and declaratory relief and seeking, in part, to quiet title in their favor under a claim of adverse possession to a 3.56–acre parcel of real estate upon which their home was located.[1]

In 1989, the Calls acquired title to 15.84 acres in northwestern Taney County by warranty deed from Charles and Eugena Isaacs. At that time, there were no improvements on the property, no visible fence lines existed, and no survey was obtained. The Calls' only information regarding the boundaries of this property came from Charles Isaacs, who indicated that the south boundary line was located at a point where the Calls eventually installed a cattle guard across the roadway leading to the location where they eventually built their home. North and east of that point, the Calls built a house, carport, and a wood shed. Nearby, they placed a mobile home for storage purposes, drilled a well, installed a septic system, and brought in electrical service. A driveway/roadway encircles the house and outbuildings, forming a somewhat elliptical shape, and reconnects with the roadway leading to their home near the cattle guard.

The Calls had resided at this location for eighteen years at the time of trial. Scattered about the property surrounding their home, they stored hay, cars, machinery, and a variety of other items. They accessed their home from state highway 248 via a twenty-feet-wide roadway easement pursuant to an easement deed obtained in 1989 from J.D. Jones, who held title to the property south of the Calls' house.

In 2004, Thomason acquired record title to approximately 160 acres south of the Calls' house, subject to the roadway easement providing access to the Calls' home from state highway 248. Thomason planned to develop a subdivision and approached the Calls in early May 2004, with an offer to construct a new roadway to which Thomason would grant them an easement in exchange for the Calls' quit claim on their original roadway easement. Later that month, Thomason prepared and presented the Calls a preliminary sketch showing the location of the new roadway. Believing that the Calls agreed with the proposal, Thomason began construction of the new roadway soon thereafter.

The new roadway was completed in August 2004. Thomason prepared an easement deed in favor of the Calls for the new roadway and a quit claim deed for relinquishment of their rights to the original roadway easement and presented both deeds and a plat to the Calls for their signatures. It was at that point in time that the Calls learned the property on which they had built their home was not actually on the property to which they held title. Where they built their house was part of property then titled to George and Christina Cadwell. The Calls had a discussion with the Cadwells about purchasing a part of the Cadwell's property which would include the property upon which the Call's house was situated and some adjacent land. Based upon this conversation, the Calls identified the property they wanted to purchase, had it surveyed, and offered to purchase from the Cadwells a 3.56–acre tract of land. Unfortunately for the Calls, the Cadwells sold a larger tract

1. George and Christina Cadwell were predecessors in title to the parcel of real property at issue in the Calls' claim of adverse possession and were joined at the Calls' request as counterclaim defendants. During the pendency of this action, George Cadwell died, and his personal representative was substituted. The counterclaim defendants did not appear at trial, after which the trial court entered a default judgment against them, quieting title and divesting them of any rights or interest in or to the property in dispute.

of their land, which included the 3.56–acre parcel, to Thomason instead. Thomason was aware at the time of this acquisition that Defendants resided on part of the property and claimed it as their own. At trial, the Calls claimed adverse possession of the entire 3.56–acre parcel as surveyed and as they offered to purchase from the Cadwells.

On the Calls' claim of adverse possession, the trial court entered judgment in favor of the Calls, quieting title against Thomason and fully vesting title to the 3.56–acre tract in the Calls. Thomason challenges the trial court's judgment to the extent of the entire 3.56–acre tract, asserting that the Calls failed to establish that they adversely possessed the "[e]asterly 667 feet of the surveyed tract." In addition, Thomason contends that defendant Charles Call's estimate that they occupied some 600 feet of the western portion of the parcel would conflict with other evidence indicating that the occupied portion was greater than he estimated, precluding the establishment of precise boundaries and rendering the judgment void "because it rests entirely on speculation and conjecture."

### 2) *Standard of Review*

Upon review of a non-jury case, the judgment must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Harness v. Wallace,* 167 S.W.3d 288, 289 (Mo.App.2005). Evidence and permissible inferences drawn therefrom are viewed in a light most favorable to the judgment, and contrary evidence or inferences are disregarded. *Williams v. Frymire,* 186 S.W.3d 912, 916 (Mo.App. 2006). Particular deference is accorded the trial judge's opportunity to view and understand queries and testimonial refer-

ences to photographs, diagrams, and maps at trial in a case such as this where, upon review, descriptions such as "down here," "this side," "at this point," "right here," etc., are meaningless absent specific designations in the record. *See Wykle v. Colombo,* 457 S.W.2d 695, 699 (Mo.1970); *A. Charles Bussen Trust v. Kertz,* 723 S.W.2d 922, 923 n. 1 (Mo.App.1987).

### 3) *Discussion and Decision*

"Adverse possession requires a showing that an occupier or user of land intended to possess the land as his or her own." *Heigert v. Londell Manor, Inc.,* 834 S.W.2d 858, 863 (Mo.App.1992). Parties seeking to establish title by adverse possession must demonstrate that their possession was actual, hostile, open and notorious, exclusive, and continuous for ten years. *Teson v. Vasquez,* 561 S.W.2d 119, 125 (Mo.App.1977). Failure to prove any one element by a preponderance of the evidence defeats the claim. Id. In deciding whether this burden has been met, "acts which constitute adverse possession depend upon the facts of each particular case, and consideration is given to the nature and location of the property, the uses to which it is put, the intent of the parties and all those under whom they claim, and all other facts and circumstances of the possession and use." *Counts v. Moody,* 571 S.W.2d 134, 138 (Mo.App.1978).

A legal description of the entire 3.56–acre parcel is provided in the record and included in the judgment. The parties do not dispute that the parcel lies entirely within property to which Thomason holds record title, and the Calls do not claim any color of title to the disputed area. The survey obtained by the Calls encompasses an area approximately 1,267.88 feet long east-west by, as described by Thomason, "roughly 100 feet wide" north-south. The

Calls admitted two exhibits of the survey, Exhibits E and F, upon which were plotted the positions of the Calls' house and outbuildings within the parcel. Exhibit E is a copy of the original survey with no additional markings. On Exhibit F, the Calls further plotted and numbered specific locations from where certain photographs (admitted as Exhibit G) were taken in order to illustrate their use of the property. Arrows next to the numbered points indicate the direction the photographer faced.

Exhibit F also contains a north-south vertical line dissecting the parcel east of the mobile home at a point designated as the location from where photograph number 3 was taken. This line is not on the copy of the original survey admitted as Exhibit E, the record is not clear as to who drew it on Exhibit F, and there are no calls for distances or angles relating its location to any of the surveyed boundary lines. The parties referred to this line as the "vertical line."

The Calls hold legal title to 15.84 acres immediately north of the surveyed area. When purchased in 1989, the Calls believed they possessed twenty acres. They started building their house and other improvements about a year and a half after obtaining title. The Calls testified that they installed a cattle guard across the driveway they built in order to keep a neighbor's cattle out of their hay. The cattle guard is situated at or very near the southwest corner of the 3.56–acre tract. Between that point and eastward to the house and outbuildings, the Calls stored various machinery, vehicles, and scrap materials. Just east and north of the house, the Calls placed a mobile home they used for storage.

Thomason conceded that the portion of the 3.56–acre tract west of the house and carport was "used to store stuff and for roadway[,]" and, by the omission of any argument otherwise, apparently concedes that the Calls established that they adversely possessed the portion "west of the vertical line[.]" The portion which Thomason claims the Calls failed to establish they adversely possessed is "that portion of the surveyed tract lying east of the vertical line shown at Point 3 on Exhibit F." Thus, the area which Thomason claims the Calls failed to establish title by adverse possession is east of the mobile home and extends to the eastern boundary of the parcel.

Absent color of title, Defendants here can acquire title by adverse possession only to property they "actually physically possessed for the statutory period." *Teson*, 561 S.W.2d at 129. "A mere mental enclosure of the land does not constitute the requisite actual possession." Id. "The nature and location of the property and the uses to which it can be applied determine what acts will characterize possession as 'actual.'" *A. Charles Bussen Trust v. Kertz*, 723 S.W.2d 922, 928 (Mo. App.1987). Acts establishing possession will vary from case to case. *Weaver v. Helm*, 941 S.W.2d 801, 805 (Mo.App.1997). Here, the 3.56 acre tract is in an undeveloped and sparsely populated area. Thus, "[a]ny combination of continuing [as opposed to occasional] acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements, and paying taxes on the land serves as evidence of adverse possession." *Forester v. Whitelock*, 850 S.W.2d 427, 429 (Mo.App.1993). The burden is upon the party claiming title by adverse possession to establish each element of adverse possession "and their concurrent existence for ten years prior to commencement of the action to perfect title[.]" *Wykle*, 457 S.W.2d at 700.

When Charles Call was asked how he and his wife had used the parcel, he testified, "I put hay and cars and stuff on it."

Call claimed that hay had been stored inside his "property line ... [a]ll over" ... "right now and has been for 18 years." However, there is no indication or evidence that any such use extended to the eastern portion of the parcel beyond the mobile home. There was no evidence that any permanent improvements were placed east of the mobile home. When Charles Call was asked specifically whether he had used that portion of the parcel east of the mobile home, or east of the "vertical line," he answered, "Can't hardly walk on it let alone use it."

The Calls offered no substantial evidence that the entire 3.56–acre parcel was adversely possessed for the statutory period. *See Conaway v. Fauller*, 972 S.W.2d 442, 445 (Mo.App.1998). Their claim of possession to the eastern portion of the parcel beyond the location of the mobile home was not "evidenced by occupation, clearing, farming, pasturing[,] and erecting improvements" thereon. *See Miller v. Warner*, 433 S.W.2d 259, 263 (Mo.1968). The record is devoid of what use, if any, the Calls made of the eastern portion of the tract beyond the location of the mobile home. *See Harris Land Dev., L.L.C. v. Fields*, 139 S.W.3d 275, 280 (Mo.App.2004). Thus, the Calls failed to sustain their burden of proof in demonstrating actual or constructive possession of this area. *See Wykle*, 457 S.W.2d at 700. Therefore, the judgment must be reversed. But we are left with the question of whether we should remand the case for the entry of an appropriate judgment.

Charles Call testified that he measured from the cattle guard to the point represented by the vertical line on Exhibit F and obtained a measurement of 600 feet. Should that be an accurate measurement, the remainder of the parcel west of the vertical line on Exhibit F to the eastern boundary would be 667 feet and an accurate legal description could be determined from the evidence presented. Thomason, however, did not believe that the measurement taken by Charles Call was accurate and stated that the distance between the cattle guard to the vertical line on Exhibit F would be greater than 600 feet.

Given this discrepancy, Thomason contends that the trial court's judgment rests on speculation and conjecture, as the exact boundary of the adversely possessed land is indefinite and uncertain. Citing *Harris Land Dev. L.L.C.*, 139 S.W.3d at 279–80, and *Weaver*, 941 S.W.2d at 805–06, Thomason relies on the principle that a party claiming title by adverse possession must "establish a specific and definite boundary of the property sought to be claimed" by adverse possession, contending that failure to do so results in a judgment based on speculation and conjecture, rendering a judgment void. Although there is such language found in some cases where property adversely claimed is not sufficiently identified, *Rosen v. Nations*, 72 S.W.3d 267, 272 (Mo.App.2002) examined cases where less-than-precise evidence regarding the location of a disputed area did not require outright reversal without remand; rather, where it is possible that the location can be ascertained and determined, remand for further evidence was ordered. Because the entry of the erroneous judgment precluded the trial court's consideration of the credibility of the conflicting measurement evidence as to the location of the vertical line, we believe that remand for such consideration and, if necessary, further evidence is appropriate.

Accordingly, we reverse the judgment and remand the case to the trial court with directions to consider, if possible,[2] the

---

2. The judge in the original trial is no longer in

office, which may preclude the possibility of a

credibility of the measurement evidence; to take additional evidence, if the trial court determines it necessary, as to the exact location of the eastern boundary within the 3.56–acre tract of the adverse use by the Calls as supported by the evidence in the first trial; and to thereafter enter judgment.

GARRISON, J., and BARNEY, J., concur.

credibility determination being made at this point.