Charlie FORESTER and Susan
D. Forester, Appellants,

v.

Keith WHITELOCK and Collene White-
lock, and Clarence R. Thompson and
Ruth A. Thompson, Respondents.

No. 17989.

Missouri Court of Appeals,
Southern District,
Division Two.

April 14, 1993.

Frederick W. Martin, III, West Plains, for appellants.

Keith Whitelock, Alton, for respondents Whitelock.

Perkins Law Office, W. Swain Perkins, Thayer, for respondents Thompson.

MONTGOMERY, Presiding Judge.

Charlie Forester and his wife Susan (Plaintiffs) brought an ejectment action against Keith Whitelock and his wife Collene (Whitelocks), Clarence R. Thompson and his wife Ruth (Thompsons).

Plaintiffs' first and second amended petitions allege they were the owners, since 1974, of approximately 110 acres of land in Oregon County, Missouri, which included "All of Blocks Two (2), Seven (7), Three (3) and Six (6) in Henry F. Redburn's Subdivision...." Plaintiffs allege Whitelocks and Thompsons are adjoining landowners who entered onto a portion of Plaintiffs' premises on July 29, 1987, and have since withheld possession from Plaintiffs. Specifically, Plaintiffs allege Thompsons withheld possession of "a field located in Block 7, and lying between Frederick Creek and Missouri Highway 19...." Although not specifically pleaded, the evidence reveals Plaintiffs' dispute with Whitelocks arose from the location of a north-south fence line within Block 2. According to Plaintiffs' surveyor, this fence line lies within the actual boundaries of Block 2 and encroaches on Plaintiffs' property 125 feet at the north end, narrowing to 100 feet at the south end.

By the pleadings and evidence of Whitelocks and Thompsons, they claim the disputed area by virtue of adverse possession. They do not claim any color of title to the disputed areas.

After a bench trial, judgment was entered whereby the court decreed, based on adverse possession, Thompsons are the fee simple owners of "that part of Block 7 in Henry F. Redburn's Subdivision ... which lies between Frederick Creek and Missouri Highway 19" and that Whitelocks are the fee simple owners of "that portion of Block 2 in Henry F. Redburn's Subdivision which lies North of the Old Alton and Thayer Road between the existing fence on the west and Block 1 on the east." From this decree Plaintiffs appeal, raising two claims of error.

Our review of this court-tried case is governed by Rule 73.01(c)[1] as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). The decree of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Neither party requested findings of fact or conclusions of law, and the trial court made none. Under those circumstances, all fact issues are considered as having been resolved in accordance with the result reached. Rule 73.01(a)(2). In view of the conflicting evidence in this case, we accept as true the evidence and inferences from it favorable to the result below and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). We keep in mind that the trial court was free to believe or disbelieve all, part or none of the testimony of any witness. *Id.*

### The Dispute With Thompsons

Plaintiffs claim the trial court erred in awarding Thompsons the described property in Block 7 because there was no substantial evidence of adverse possession in that Thompsons' occasional use of the property for agricultural purposes did not constitute actual, hostile and exclusive possession of the land.

The facts favorable to the judgment reveal the following: Thompsons purchased the property adjacent to the disputed area in 1955 and moved on the property in 1959. They have continued living there to present date.

The disputed area is a field bounded by Frederick Creek on the south and west and Highway 19 on the east.[2] The parties refer to this area as the "lower field," and we shall do likewise. Plaintiffs' surveyor testified the actual boundary line between Plaintiffs' and Thompsons' property runs

---

1. Rule references are to Missouri Rules of Court (1992) unless otherwise indicated.

2. No issue is raised concerning the location of the northern boundary of the disputed area. We assume it is the north line of Block 7.

roughly through the middle of the lower field in a north-south direction.

Respondent Clarence Thompson testified since 1959 he used the lower field and claimed it as his own. He bulldozed and seeded the lower field. He bushhogged and cleared brush along the creek bank. The entire lower field was bushhogged every year. He fertilized the lower field almost every year and limed the field on occasions. He cut hay off the field almost every year and sometimes twice a year. He used the field as pasture for his cattle almost every year since 1964. He built a levee on Frederick Creek to keep the water from coming on the field. In addition, he built fence along Highway 19 and repaired the fence near the bridge over the creek to keep his cattle in the field. There was never a cross fence through the lower field which separated Thompsons' deeded land from the disputed area.

Erman McGibney testified he previously owned Plaintiffs' property and that Frederick Creek had served as a boundary line between his property and Thompsons. He stated an old fence had existed on that boundary line.

Bob Holman testified he had lived in the area since the "later 50's," and Thompsons had used the lower field for pasture and hay on a yearly basis. He indicated no one else had used the field to his knowledge.

Plaintiff Charlie Forester testified an old fence ran around the west and south side of Frederick Creek. He admitted the old fence had been there for as long as he could remember.

In order to establish title by adverse possession, "[c]laimant must show possession that is 1) hostile and under a claim of right, 2) actual, 3) open and notorious, 4) exclusive, and 5) continuous for a period of ten years." *Green v. Lange,* 797 S.W.2d 765, 767 (Mo.App.1990). Furthermore, "claimant has the burden of proving by a preponderance of the evidence the existence for the entire statutory period of each and every element of adverse possession." *Id.*

■ As we understand Plaintiffs' argument, they say the occasional use of the lower field by Thompsons for agricultural purposes does not rise to the level of actual possession. Plaintiffs rely on *Teson v. Vasquez,* 561 S.W.2d 119 (Mo.App.1977). According to *Teson,* actual possession results from a claimant showing "his present ability to control the land and his intent to exclude others from such control." *Id.* at 126. Furthermore, a claimant who occupies land without color of title (as the Thompsons) must show physical possession of the entire area claimed, i.e., mere mental enclosure of the land does not constitute requisite actual possession. *Id.*

> Any combination of continuing acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements, and paying taxes on the land serves as evidence of actual possession, but is not conclusive.

*Green,* 797 S.W.2d at 768; *Teson* at 126.

"The nature and location of the property and the uses to which it can be applied determine what acts will characterize possession as 'actual.'" *A. Charles Bussen Trust v. Kertz,* 723 S.W.2d 922, 928 (Mo. App.1987).

■ From the record before us, the trial court had ample evidence to conclude Thompsons established actual possession of the entire lower field for more than ten years. Beginning in 1959, the evidence revealed that Thompsons occupied, cleared, cultivated, pastured, erected fences and built a levee on the disputed area. These acts extended to the entire area of the lower field and are consistent with the appropriate use of pastureland. When applied to such land, these acts were continuing in nature rather than occasional. There was substantial evidence of actual possession of the lower field to support the decision of the trial court.

Plaintiffs next say there was no substantial evidence of hostile and exclusive possession of the lower field by Thompsons. Possession which is hostile or under a claim of right occurs when the possession is "opposed and antagonistic to the claims of all others, i.e., the claimant must occupy the

land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another." *Teson,* 561 S.W.2d at 127.

The record is clear that both Plaintiffs and Thompsons knew the true boundary line was somewhere through the lower field. With this knowledge, Thompsons' continued acts of occupancy indicate a clear intent of Thompsons to possess the entire lower field as their own and not in subservience to the record title of Plaintiffs and their predecessors. The evidence further revealed Thompsons' possessory acts were to the exclusion of all others. Substantial evidence supports the trial court's view that Thompsons' possession was hostile and exclusive.

Finally, Plaintiffs argue that Thompsons' use of the lower field was permissive in nature because Thompsons agreed with Plaintiffs that Plaintiffs could use "an upper field" (at least owned in part by Thompsons) in return for Thompsons' use of the lower field. We have carefully read each reference to the record by Plaintiffs for any evidence supporting this agreement. Finding none whatsoever, we hold this point has no merit.

### The Dispute With Whitelocks

■ Plaintiffs allege the trial court erred in awarding Whitelocks a strip of land in Block 2 lying east of the north-south fence because there was no substantial evidence of adverse possession in that Whitelocks' occasional use of the land for agricultural purposes and the presence of the fence does not constitute actual and hostile possession.

After Plaintiffs acquired Block 2 in 1974, Whitelocks purchased the adjoining 10–acre tract to the east (Block 1 of Redburn's Subdivision) from Robert Presley in 1987.

The evidence which supports the trial court's judgment includes the testimony of Plaintiff Charlie Forester. Soon after Whitelocks' purchase of Block 1 Plaintiff told Mr. Whitelock there was a problem with the fence line. Whitelock stated his belief that he bought all the land to the

fence and thereafter pastured his stock to that fence line.

Robert Presley bought Block 1 in 1973 and testified he lived there fourteen years. During that time he claimed ownership of all the land to the fence in question, pastured his cattle and cut hay to the fence along with making repairs to it. Shortly after his purchase of the property, Presley testified the fence needed repairs, and he so advised his neighbor. Plaintiff agreed to help with the repairs at a later date, but Presley desired to proceed immediately. Plaintiff then suggested that Presley use some of his fence posts for the repairs and Presley did so. At no time did Plaintiffs indicate to Presley the fence was not their boundary line.

Defendant Ruth Thompson testified she was born in 1928 in the house now occupied by Whitelocks. Block 1, along with other land, was owned by her parents at the time, and she lived there until 1946. During that time, her father pastured his horses and cattle to the fence in question. Except for seven years in the 1950s, Ms. Thompson always lived near the Whitelocks' property. She stated the north-south fence had always been accepted as the boundary line with the adjoining property.

Therefore, the evidence shows clearly that Whitelocks and their predecessors in title have been in the actual and peaceful possession of the strip of land in question for over fifty years. The fence in question has been treated as a boundary line by both Whitelocks and Plaintiffs as well as their predecessors in title. Plaintiffs made no claim beyond the fence for almost fourteen years to Robert Presley or his predecessor in title. They furnished posts for Presley to repair the fence, a clear indication of acceptance of the fence as the boundary. The possession of Whitelocks and their predecessors in title was open and notorious to Plaintiffs. There was no evidence the predecessors in title of both Whitelocks and Plaintiffs ever had a controversy over the boundary line.

This case is almost identical to *Finck Realty Co. v. Lefler,* 208 S.W.2d 213 (Mo. 1948), where the dispute was over a narrow

strip of farmland. Defendants offered substantial evidence that the fence they relied upon as the boundary line had been there for over fifty years. The Supreme Court determined defendants' evidence established title by adverse possession beyond any question. Quoting from *Landers v. Thompson*, 356 Mo. 1169, 205 S.W.2d 544, 546 (1947), the Court said:

> " 'The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs.' " [205 S.W.2d at 546]

> This court in that case also said: "Even if the fence was not on the true line and that fact was unknown to the owners of the west eighty, nevertheless a hostile claim could be made by one who believed himself to be the owner of the land which he was claiming."

*Finck* at 215.

As we understand Plaintiffs' argument, they claim the mere use of a fence as a boundary line does not establish adverse possession without a hostile intent to claim the land regardless of the location of the true boundary. Plaintiffs assert the evidence showed no hostile intent because the true boundary line was unknown to the parties. They rely on *Adams v. White*, 488 S.W.2d 289 (Mo.App.1972), where we said:

> And if a defendant, even through ignorance and mistake of the true boundary, builds a fence which encroaches upon another, his possession will be adverse provided his intention is to hold and claim in all events the entire property that the fence enclosed. On the other hand, if a defendant locates the fence on what he recognizes and supposes to be the true line and only intends to claim to the true line whenever and wherever it might be ascertained, the possession is not adverse.

*Id.* at 292–93 (citations omitted).

Certainly the legal principle stated in *Adams* is correct, but it does not support Plaintiffs' argument. Both Mr. Presley and Whitelocks, ignorant of the true boundary, intended to claim the land up to the fence and used it accordingly. The possession of Mr. Presley and Whitelocks was more than the 10–year statutory period and was adverse because of their use and intent to claim to the fence.

An oft-cited case on boundary disputes is *Tillman v. Hutcherson*, 348 Mo. 473, 154 S.W.2d 104 (1941), which is factually similar to the instant case and relied upon in *Finck Realty Co.* *Tillman* contains a thorough and scholarly discussion of the issue before us, and we need not lengthen this opinion demonstrating its application to the evidence here. Both *Finck Realty Co.* and *Tillman* convince us the trial court correctly determined that title to the strip of land in question was vested in Whitelocks by virtue of adverse possession.

Judgment affirmed.

FLANIGAN and GARRISON, JJ., concur.