Louis GARY, et al., Appellants,

v.

Emmett L. POLITTE, et
al., Respondents.

No. WD 48485.

Missouri Court of Appeals,
Western District.

June 28, 1994.

Stephen C. Scott, Hindman, Scott, Goldstein & Harder, P.C., Columbia, for appellants.

Edwin J. Carlton, Oliver, Walker, Carlton & Wilson, Columbia, for respondents.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

PER CURIAM.

This is an appeal by plaintiffs, as individuals and partners, from an adverse result

from a bench trial on their suit to cancel their contract to purchase an apartment complex owned by the defendants. Review is under Rule 73.01, and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

After extensive negotiations, the appellants (Buyers) agreed to pay $1,200,000 for the Boone Dock Apartments located in Columbia. In addition to the purchase, the contract contained provisions establishing the respondents (Sellers) agreed to: 1) continue to manage the units for six months for a certain price, on the condition that operating expenses would be kept below $1,500 per month; 2) a 97% occupancy rate would be maintained for six months; and 3) as managers they would collect the rents. The balance of the purchase price was represented by two secured promissory notes. These notes were in default prior to suit.

In this suit, Buyers allege Sellers misrepresented the apartment's and complex's operating expenses and rental income by supplying inaccurate information regarding the vacancy rate and caliber of tenants. Additionally, Buyers assert at the time of purchase, Sellers mislead them into paying too much for the property and caused them to pay additional amounts to make up for a negative cash flow after acquisition of the complex. Buyers sought to: 1) rescind the contract and obtain damages for breach; 2) obtain actual and punitive damages for the torts of intentional or negligent misrepresentation; and 3) cancel the management contract and stop foreclosure. The Sellers counterclaimed to collect on the two promissory notes.

The court entered judgment for the Sellers on the counts of recision and misrepresentation counts, and found that Sellers were entitled to foreclose, since the notes' combined balances were over $1,339,000 were in default. Judgment for $1,339,615.40 was entered for the defendants. The court found the Sellers did not comply with the 97% occupancy clause, did not adequately collect the rents or hold the agreed maintenance cap at $1,500 per month for the first six months, and gave a set-off on those damages, totalling approximately $31,200 against the amount they awarded as being due on the purchase notes.

■ The thrust of this appeal is Buyers' contention that the trial court's findings as to the fact Sellers did not misrepresent the historical income or expenses of the apartment complex, were against the weight of the evidence. Those findings destroyed Buyers' tort and equitable claims. A court should set aside a judgment on the grounds of being against the weight of the evidence only when the court has a firm belief the judgment is wrong. " 'Weight of the evidence' means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics but, rather, on its effect in inducing belief." *Waddell v. Director of Revenue*, 856 S.W.2d 94, 95 (Mo.App.1993).

Much of the evidence put forth on appeal by Buyers is favorable to them. It relates: statements made by Mr. Politte on behalf of Sellers, either to them, their agents, or in the real estate listing in 1984; representations the apartments were grossing about $15,500 per month; and expenses, exclusive of debt service, were $4,000 with 97% occupancy rate. Buyers say these figures were untrue, as well as were the status of tenant security deposits, and some of the information supplied to Buyers during the negotiations misstated other expenses, which Buyers were burdened with, and that there was a certain unit in the complex which was not included in this sale, but income from that unit was represented as part of the total income stream to Buyers.

Buyers acknowledge hiring an engineering company to inspect the complex during the negotiation period (September 1984–January 1985). Likewise, a local appraiser was hired to make a report on the property and examine the rent rolls and other data requested from, and supplied by, the Sellers which included income and expense statements and leases. The Buyers' appraiser said the property was worth $1.22 million. All the complex's operating reports were provided to Buyers prior to sale, Buyers did not request tax returns. Buyers were, at the time, represented by an attorney and a real estate agent.

The two-day trial produced substantial evidence that the information provided by the Sellers was not incorrect or misleading with regard to the property's historical record. The court found the fair market value of the property was $1.2 million. Appellants do not dispute this finding. There seems to be no dispute about the fact Buyers were not mislead in the negotiations as to the particular units which were being sold. The evidence established the rental income decreased, even below the figure guaranteed by the Sellers, and the trial court's judgment awarded compensatory damages for this loss, which is not in dispute. Likewise, maintenance expenses increased during the period the parties had contracted for the Sellers to continue management, and damages were awarded.

■ The Buyers' partnership consisted of a chemical engineer (Patelis, the only one who testified), a lawyer and two other professionals. The trial court was not bound to believe the testimony of Patelis as to oral representations made to him by Sellers. *Forester v. Whitelock*, 850 S.W.2d 427, 429 (Mo.App.1993). In any event, when the parties are on an equal footing, and knowledge is equally available, misrepresentation or erroneous statement of fact is not actionable. *Consumers Cooperative Assoc. v. McMahan*, 393 S.W.2d 552, 556 (Mo.1965). Further, when one party makes an independent investigation, the party will be presumed to have been guided by what was learned, and not from any misrepresentation. *Id.* This point is denied.

■ In their second point, Buyers allege the damages on the breach of contract action, $8,254.75, fell short of their claim of $975,000, plus interest. This point is not well taken; the trial court's findings support that the damages compensable were for Sellers' failure to maintain a 97% occupancy rate during the period after the sale. The figure awarded correctly represents the extent of damages realized by Buyers.

■ The third point concerns evidentiary question raised when the trial court excluded Buyers' attempt to introduce Sellers; Politte's, separation agreement filed in his disso-

lution action, from evidence on the objection of insufficient foundation. This agreement listed the corporate stock in the complex owned by Politte to have a value of $500. Buyers now allege this evidence would have shown the value of the complex was much less than Sellers represented. Assuming there was an error in exclusion, this exclusion did not materially affected the merits of the action. Rule 84.13(b).

■ Finally, Buyers contest the court's ruling regarding the Sellers' garnishment directed at the company hired to manage the property after Sellers had breached the management of the property's portion of the contract. Specifically, Sellers sought to satisfy the judgment on the counterclaim for the obligation (evidenced by the two notes) created by the partnership in purchasing the complex. Judgment was entered against the four partners, as individuals and as partners, since there could not be a judgment against the partnership as an entity. The Buyers allege the garnishment was against "specific partnership property in the possession of the garnishee, and § 358.250 RSMo 1986 prohibits execution against specific partnership property ... of an individual debtor-partner...." As the Sellers point out, § 358.-250.2(3), states the law that a partner's right in specific partnership property is not subject to execution, "except on a claim against the partnership." The facts here fall within the statutory language on a debt against the partnership.

The judgment is affirmed.