**Peggy CRAWFORD and Joey Crawford, Plaintiffs/Respondents,**

**v.**

**Clifford DETRING, William A. Detring, and Margaret N. Thomas, Defendants/Appellants.**

**No. 71893.**

Missouri Court of Appeals, Eastern District, Southern Division.

Jan. 20, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 24, 1998.

Application for Transfer Denied May 26, 1998.

Dennis E. McIntosh, Farmington, for appellants.

Christina L. Kime, L. Dwayne Hackworth, Hackworth, Kime & Bowless, L.L.C., Piedmont, for respondents.

GRIMM, Presiding Judge.

Plaintiffs sued defendants seeking specific performance of a contract for the sale of real property. Following a bench trial, the trial court ordered specific performance and defendants appeal. Although their brief sets forth five points, their basic contention is that the written contract does not satisfy the statute of frauds. We affirm.

■ Our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.*

■ Further, Rule 73.01(c) directs that we give due regard to the opportunity of the trial judge to assess the credibility of wit-

nesses. Thus, where there is conflicting evidence, we accept as true the evidence and inferences from it favorable to the trial court's result and disregard contrary evidence. *Forester v. Whitelock*, 850 S.W.2d 427, 428 (Mo.App.S.D.1993). We keep in mind that a trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. *Id.* With these guidelines in mind, we state the facts favorable to the judgment.

## I. Background

Defendants' mother died in January 1993, and following the probate of her estate, the three defendants each received a one-third interest in land she owned. Some of the decedent's land laid on the west side of a highway; approximately 16 acres laid on the east side.

Sometime in the fall of 1993, plaintiff Peggy Crawford and Ronald White approached defendant Clifford Detring to inquire about the purchase of some land. Clifford Detring showed them a 100–acre tract he owned, as well as the property the defendants inherited. He priced the inherited property at $5,000 per acre.

Neither Crawford nor White had the money to purchase the property. In November, White approached Tom Wills to see if he was interested in purchasing the property with him. Wills agreed to do so. The two of them, together with Clifford Detring, walked the east tract. Mr. Detring pointed out to them that his sister, defendant Thomas, lived on the property and wanted to keep a tract surrounding her house of approximately three acres. Mr. Detring described the boundaries of the property to be retained as "from where their stake was along the highway ... to approximately where the hackberry tree on the east line was." Further, he said his sister "wanted to keep whatever the property was from there parallel with [the south property line]." The rectangle piece would front on the highway.

After walking over the property, an appointment was made to write the contract. White and Wills met with the three defendants at Clifford Detring's house on Decem-

ber 2, 1993. The meeting lasted one and one-half to two hours. The discussions included White and Wills' plans to subdivide the property and to have it annexed to the City of Farmington. In addition, they talked about getting sewers to the property and several options they had for development.

All three defendants said that Mrs. Thomas wanted to keep approximately three acres. Wills said that the defendants wanted to keep "like a safety barrier there and they had staked off, already, put a stake out in the front yard and in the back by the back fence where they wanted to have their property go out to." Defendants agreed to have the property surveyed to determine its exact acreage.

None of the five were lawyers or real estate brokers; "all of [them] came up with the wording" for the document. Wills actually wrote the document based on the agreements reached. It provides:

On this day, 12–2–93 this contract entered in between Margaret N. Thomas, Clifford E. Detring, and William A. Detring and Thomas D. Wills III and for property known as part of Frieda Detring farm east of Highway H Farmington, Mo. Ernest (sic) money exchanged of 1,000.00 with the balance due twelve months from now or sooner at buyers (sic) discretion. Taxes to be paid for 1993 by Detring family. Taxes for 1994 and thereafter will be Tom D. Wills responcibility (sic). Sellers agree to pay one half of closing cost at closing date and buyer pays for Title Ins. and other half of closing expenses. Price to be $5,000.00 per acre, total acreage to be determined after Margaret N. Thomas retains a portion of said property for herself.

The document was signed by the three defendants and Wills. At that time, Wills paid defendants $1,000 in cash. The document noted this, saying: "Received $ 1,000.00 cash from Tom D. Wills as stated above." Below this language was the signature of Clifford Detring.

Shortly after this meeting, William Detring contacted a surveyor. Clifford Detring told the surveyor to use the stake on the highway as the beginning point for defendant Thomas' property. The surveyor was to project the

point east and west to intersect the highway on the west and to the property line on the east. That line was to be parallel with the south property line. The highway and the property line would be the other sides of the rectangle.

This survey created a 3.06 acre tract for defendant Thomas, with the remaining acreage being 13.35 acres. That was all the land that defendants' mother had owned on the east side of the highway. The surveyor said he did not have any contact with either White or Wills while he was doing the survey.

The survey was completed December 30, 1993. Shortly thereafter, the surveyor met with the three defendants at the Thomas' house. He went over the results with them. None of them gave any indication to the surveyor "that they weren't happy with the results or something was wrong with coming up with 3.06 acres."

Shortly after meeting with the surveyor, the 3.06 acres were conveyed to defendant Thomas. Also, about that time, Clifford Detring contacted White and Wills. They went to Detring's house and he gave them several copies of the survey. Thereafter, with Mr. Clifford Detring's approval, White put up two "For Sale" signs on the property. Defendants never voiced any objections to these signs.

In the meantime, the day after the contract was signed, White contacted two engineers. He asked them to give estimates on the cost of subdividing the property. White apparently received the estimates in January and discussed them with Wills. After seeing the projected costs, Wills thought that he had "bit off more" than he could chew. He then decided to sell the contract and sold it to plaintiff Joey Crawford for his $1,000 investment.

Because Wills knew some of the Detring family, and "out of courtesy," he and White visited Clifford Detring. At that time they discussed the contract and wrote the following:

On this day, 2–1–94 this letter is simply to notify that my holdings in this property

A.K.A. Detring Property East of Hwy H. is being sold to Ron White. The contract written on 12–2–93 is not altered in any way the price is now on 13.35 acres @ 5,000.00/ac.

This document was signed by Clifford Detring, White, and Wills. Mr. Detring did not make any objections concerning the document or any portion of it.

White later assigned his rights to the land to plaintiffs. Thereafter, plaintiffs entered into an agreement to sell the property to the Grays. The Grays submitted an application to the City of Farmington to have the property annexed.

On April 8, 1994, the City notified defendant Thomas of this application. The notice indicated that the Grays proposed that the property be annexed as R–4, General Residential property. Further, the notice indicated that a Planning and Zoning Commission meeting would be held on April 14. After receiving the notice, defendant Thomas talked with one of the Grays and learned that the Grays were paying $9,000 per acre for the land.

On May 5, defendants' attorney wrote Wills. He indicated that the document did not constitute a complete contract and asked for directions for returning the $1,000. This was Wills' first knowledge that the defendants "felt that the contract was not valid." On May 31, defendants' attorney wrote a similar letter to plaintiffs' attorney.

Plaintiffs' attorney notified defendants' attorney that plaintiffs planned to close the transaction prior to twelve months from December 2, 1993. Plaintiff Peggy Crawford appeared with the funds to close, but defendants did not appear.

## II. Statute of Frauds

Defendants' first three points all concern the statute of frauds defense. For ease of discussion and in order to avoid repetition, we consolidate them.

In their first point, defendants allege the trial court erred in ordering specific performance of the December 2, 1993 writing because it "does not satisfy the statute of frauds." They argue "it does not describe the property to be retained and does not refer to an external standard and the trial court improperly considered the February 1, 1994 writing to supply the missing term." The second point alleges that the December 2 writing left an essential term for future determination. The third point alleges that the February 1, 1994 writing was not signed by two of the defendants and there was no showing that the signing defendant was an agent for the others.

■ It is doubtful that defendants' statute of frauds defense is preserved. Rule 55.08 designates the statute of frauds as an affirmative defense. To allege an affirmative defense, the pleading must "contain a short and plain statement of the facts showing that the pleader is entitled to the defense." *Id.* Defendants' answer does not mention the statute of frauds.

Some cases have held that the mere failure to plead the statute of frauds constitutes a waiver of that defense. *Martin v. Ray County Coal Co.*, 288 Mo. 241, 232 S.W. 149, 152 (Div. 1 1921); *Inloes v. Inloes,* 567 S.W.2d 732, 735 (Mo.App. W.D.1978). Others, at least in dictum, have held that although the defense was not pled, invoking the statute by way of objection to the introduction of oral evidence is sufficient. *State ex rel. Place v. Bland,* 353 Mo. 639, 183 S.W.2d 878, 886 (1944); *Leeson v. Etchison,* 650 S.W.2d 681, 683 (Mo.App. W.D.1983),

In the case before us, defendants' answer did not mention the statute of frauds. Nor did they make any objection to any testimony concerning the transaction or any of the documents, much less objecting on the ground that the testimony or documents violated the statute of frauds. This "conduct waived any protection which the statute might have afforded." *Campbell v. Dixon,* 647 S.W.2d 617, 620 (Mo.App. S.D.1983); *Norden v. Friedman,* 756 S.W.2d 158, 162 (Mo.banc 1988).

■ Defendants acknowledge that their answer does not use the words "statute of frauds." They contend, however, that those specific words are not required if the answer contains sufficient averments to present that defense. *See Lauria v. Wright,* 805 S.W.2d 344, 346 (Mo.App. E.D.1991). However, even

if we were to construe the answer to raise that defense, this does not aid defendants. For, even if the statute of frauds is pled, "failure to object to offered evidence of the oral agreement constituted a waiver of the protection of the statute." *Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 879 (Mo. App. E.D.1984).

Further, defendants argue that the issue was tried by implied consent. They contend that references to the statute of frauds in their opening statement and in plaintiffs' trial brief submitted after the trial are sufficient to bring them within the purview of Rule 55.33(b). That rule provides that when "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

Whether correct or not, it could be argued that the mere mention of a defense in an opening statement is sufficient to raise an issue for the purposes of Rule 55.33(b). Without reaching that issue, but assuming such to be the situation, that too does not aid defendants. Although such a ruling would enable defendants' answer to be treated as if it included this defense, the failure to object to the testimony of the oral agreement would waive any protection of the statute. *Sheinbein,* 670 S.W.2d at 879.

■ We turn to the December 2 document. It identifies the parties and refers to the "part of Frieda Detring farm east of Highway H Farmington, Mo." Further, it sets forth the price to be paid, $5,000 per acre, who should pay the 1993 and 1994 taxes, and that the transaction would be closed within one year. In addition, it provided that the total acreage was to be determined after defendant Thomas retains a portion of the property for herself. All four parties to the agreement signed it.

The surveyor's testimony established that Frieda Detring had owned land east and west of Highway H. The only property east of Highway H which she had owned was the 16.41 acres involved in this dispute.

In *Seabaugh v. Sailer,* 679 S.W.2d 924 (Mo.App. E.D.1984), this court considered the sufficiency of a receipt for the purchase of a farm. The receipt acknowledged receiving "$1,000.00 cash as down payment on farm." *Id.* at 925. In the face of a statute of frauds claim that the description was inadequate, this court held that a writing sufficiently identifies the property if it provides the key to identification of the land. *Id.* at 926. We acknowledged the principle of "that is certain which can be made certain." *Id.* Further, we recognized that to determine certainty, "the written instruments, together with the attending circumstances, are considered." *Id.* We held that in view of the fact that the evidence established that the seller owned only one farm, the evidence was sufficient to satisfy the statute of frauds.

Here, the trial court considered not only the December 2 writing and attendant circumstances, but also the February 1 writing. The February 1 document identifies the "contract written on 12–2–93" and provides that "the price is now on 13.35 acres @ 5,000.00/ac."

■ Missouri has long recognized that the memorandum required by the statute of frauds "need not be contained in a single document." *Logan v. Waddle,* 315 Mo. 980, 287 S.W. 624, 625 (Div.1 1926). Rather, the memorandum "may be contained in separate writings when the separate writings, taken together, meet the requirements of the statute." *Id.; Ahrens v. Dodd,* 863 S.W.2d 611, 613 (Mo.App. E.D.1992). The December 2 document is specifically identified in the February 1 writing. In such a situation, the two writings are properly connected and may be considered together. Elements "missing or uncertain in one may be supplied or rendered certain by another, and their sufficiency will depend upon whether, taken together, they meet the requirements of the statute as to content." *Wheeler v. Blanton,* 253 S.W.2d 497, 499 (Mo.App. E.D.1952). Even "where the terms of an agreement are supplied by an unsigned document, the signatures of the party to be charged may be found in a separate writing, provided that one document expressly or explicitly incorporates the other by reference." *Arnold v. Broadmoor Development Co.,* 585 S.W.2d 564, 566 (Mo.App. E.D.1979).

In the case before us, all four parties signed the December 2 document. Even if the identification of the land to be bought and sold was too indefinite to satisfy a properly raised statute of frauds defense to that document, the February 1 document supplies the missing element. The February 1 document refers to the Detring property east of Highway H and ties down that the land sold is 13.35 acres. The land need not be "fully and accurately described as long as the writing affords means whereby identification may be made perfect and certain by parol evidence." *Ahrens v. Dodd*, 863 S.W.2d at 613 (citations omitted).

Here, the survey defendants furnished to White and Wills identified the 13.35 acres. Further, the fact that the remaining 3.06 acres had already been deeded to defendant Thomas, the only Detring land east of Highway H remaining was the 13.35 acres. Thus, the documents and testimony were sufficient to permit the trial court to order specific performance.

One final observation. Plaintiffs do not contend that they are entitled to purchase more land, or that they are obligated to purchase less than the 13.35 acres. Nor do defendants argue that defendant Thomas wants more or less than the 3.06 acres, or that plaintiffs should be buying more or less than the 13.35 acres. Nor is the price in dispute. It is clear that there was a "meeting of the minds" which created a contract. Defendants' first three points are denied.

### III. Failure to Perform Essential Obligations

In their fourth point, defendants allege that "plaintiffs failed to show their performance or offer of performance of every essential obligation resting upon them, including payment of real estate taxes." The argument portion on this point clarifies that the only alleged failure was to pay the 1994 and 1995 real estate taxes.

The December 2, 1993 writing provided that payment of real estate taxes for 1994 and thereafter would be plaintiffs' responsibility. However, prior to the date those taxes came due, defendants advised plaintiffs they would not honor the contract. Although plaintiffs appeared at a scheduled closing with a check for the purchase price, defendants did not. Under such circumstances, plaintiffs were not required to tender their contractual obligations. *See Baker v. McCue–Moyle Development Co.,* 695 S.W.2d 906, 913 (Mo.App. E.D.1984).

Further, White testified that he and plaintiff Peggy Crawford "went to the courthouse to pay the" 1994 taxes. He said that defendants had paid them the day before. Obviously, at the time this case concludes and the land is transferred, defendants will be entitled to be reimbursed for all real estate taxes they have paid on the 13.35 acres for the year 1994 and subsequent years. Point denied.

### IV. Unclean Hands

Defendants' final point claims plaintiffs had "unclean hands." They contend that "they hid the identity of the real party in interest and failed to pay real estate taxes as agreed."

An established equitable doctrine is that of "unclean hands." That doctrine "requires that a party coming into a court of equity seeking specific performance must have acted in good faith." *Conley v. Rauschenbach,* 863 S.W.2d 617, 620 (Mo.App. E.D.1993) (citations omitted). We find no abuse of trial court discretion in denying the application of that doctrine here and the granting of the order of specific performance. Point denied.

The trial court's judgment is affirmed.

CRANE and HOFF, JJ., concur.