**In re the Marriage of Stephanie HOFFMAN and James Lee Hoffman.**

**Stephanie Hoffman, Respondent,**

v.

**James Lee Hoffman, Appellant.**

No. 22625.

Missouri Court of Appeals, Southern District, Division One.

July 29, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied Aug. 20, 1999.

Robert D. McGee, Springfield, for appellant.

Charles B. Cowherd, Husch & Eppenberger, LLC, Springfield, for respondent.

CROW, Presiding Judge.

James Lee Hoffman ("Jay")[1] appeals from a judgment dissolving his marriage to Stephanie Hoffman ("Stephanie"). The judgment, *inter alia,* ordered Jay to pay Stephanie maintenance of $325 per month for thirty-six months. Jay insists this court should reverse that award.

The parties married October 29, 1992. The union produced no offspring; however, Stephanie is the mother of a child "from a prior relationship."[2] The parties separated October 31, 1996.

Stephanie presented evidence that her "take home earnings" were $927.85 per month. She is an emergency medical technician and, at time of trial, was "in nursing school" endeavoring to become a registered nurse. Stephanie avowed it would require three and a half years to achieve that goal.[3]

Stephanie listed her "general" monthly expenses as: $395 rent; $80 utilities; $100 automobile operation (including insurance); and $75 "personal loan."[4] Those expenses total $650.

As this court fathoms Jay's brief, he does not challenge the expenses in the preceding paragraph.

Stephanie listed her "other" monthly expenses as: $100 food; $50 clothing; $15 medical and dental; $40 laundry and cleaning; $50 recreation; $35 fitness center dues; $50 school; and $50 miscellaneous. Those expenses total $390.

Jay maintains four of the expenses in the preceding paragraph are unnecessary: recreation; fitness center dues; school; and miscellaneous. Those expenses total $185. Eliminating them would reduce Stephanie's "other" monthly expenses to $205,

1. At trial, Mr. Hoffman testified he "go[es] by Jay."

2. At trial (August 26, 1998), Stephanie testified her child was seven years of age.

3. As this court comprehends Stephanie's testimony, her objective is a "BSN"—inferably a bachelor of science in nursing.

4. This court deduces from Stephanie's testimony that the $75 loan payment is for a television and some furniture Stephanie bought after the separation. Stephanie testified she "had no furniture" when she left Jay.

leaving her with overall monthly expenses of $855 ($650 "general" expenses and $205 "other" expenses). Inasmuch as Stephanie's monthly spendable income ($927.85) exceeds $855, Jay argues Stephanie is ineligible for maintenance.[5]

Section 452.335.1, RSMo 1994, authorizes a trial court to grant maintenance to a spouse only if the court finds such spouse:

"(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

"Reasonable needs" is the standard for determining which expenses are allowable in adjudicating a claim for maintenance. *Brooks v. Brooks*, 957 S.W.2d 783, 789–90[8] (Mo.App. W.D.1997). In evaluating the merits of a party's claimed expenses, a trial court assesses the credibility of witnesses and evaluates the merits of the expenses claimed. *Id.* at 788[4].

This court's review of this judge-tried case is governed by Rule 73.01(c).[6] In *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), the Supreme Court of Missouri construed the predecessor of Rule 73.01(c) to mean that the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. That standard applies to appellate review of a judgment dissolving a marriage. *T.B.G. v. C.A. G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). In heeding that standard, an appellate court accepts as true the evidence and inferences therefrom favorable to the judgment and disregards contrary evidence. *Id.* at [2].

Furthermore, an appellate court recognizes that a trial court has broad discretion in determining the amount of maintenance; consequently, an appellate court interferes only where a trial court abuses its discretion. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 66[8] (Mo. banc 1983). Nonetheless, an award of maintenance must be "made within a reasonable tolerance of proof," hence a maintenance award cannot stand without evidence to support it. *Halupa v. Halupa*, 943 S.W.2d 272, 277[13] (Mo.App. E.D.1997).

In the instant case, the trial court found Stephanie lacked sufficient property to provide for her needs and was unable to fully support herself through appropriate employment. However, the trial court made no findings regarding any of Stephanie's specific monthly expenses. Consequently, this court applies Rule 73.01(a)(3), which provides that all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. *In re Marriage of Swofford*, 837 S.W.2d 560, 563[7] (Mo.App. S.D.1992); *Stratton v. Stratton*, 694 S.W.2d 510, 512[3] (Mo.App. E.D.1985).

■ There was no category in Stephanie's budget for personal hygiene items or household supplies, hence they would presumably fall within the "miscellaneous" classification (to which Stephanie assigned $50 per month). Viewing the evidence favorably to Stephanie, this court holds the trial court did not abuse its discretion in finding $50 was a reasonable amount for Stephanie's miscellaneous monthly expenses.

This court further holds the trial court did not abuse its discretion in finding Stephanie reasonably needed $50 per month for "nursing school" expenses and $50 per month for recreation—both modest amounts. Finally, mindful that Stephanie is employed as an emergency medical tech-

---

5. Jay does not contend he is financially unable to pay maintenance.

6. References to rules are to Missouri Rules of Civil Procedure (1999).

nician (a vocation inferably requiring some degree of physical vigor and stamina), this court holds the trial court did not abuse its discretion in finding Stephanie's $35 monthly fitness center dues were a reasonable need.

Stephanie thus established reasonable monthly needs totalling $1,040 ($650 "general" expenses and $390 "other" expenses). Those needs exceed her monthly spendable income ($927.85) by $112.15. Consequently, Stephanie demonstrated eligibility for maintenance of $112.15 per month.

However, as reported earlier, the trial court granted Stephanie monthly maintenance of $325. That is $212.85 more than the evidence showed Stephanie reasonably needs. It thus appears the trial court awarded more maintenance than the evidence supports.

■ Stephanie responds that the extra $212.85 is justified by her evidence regarding the expenses she incurs each month for her child. Stephanie listed those expenses as: $100 food; $100 clothing; $50 medical and dental; $50 recreation; $50 school; and $150 payments to others for child care. Those expenses total $500. According to Stephanie, her "reasonable needs" under § 452.335.1(1), quoted earlier, should logically include those expenses.[7]

Jay asserts the trial court could not properly consider Stephanie's expenses for her child in determining Stephanie's reasonable needs. To do so, says Jay, would require him to pay "what amounts to child support for a child he has no legal or moral obligation to [support]."

The parties cite no case addressing that issue, and this court's research unearthed no Missouri decision on the subject.[8] There is, however, an analogous Idaho case: *Smiley v. Smiley,* 46 Idaho 588, 269 P. 589 (1928).

In *Smiley,* the parties separated during the first year of their marriage. 269 P. at 589. The trial court granted the wife alimony. *Id.* The wife complained on appeal that the alimony was a "trifling allowance," as the trial court refused to consider the wife's children of a former marriage as one of the circumstances to be weighed in awarding a suitable sum of alimony. *Id.* The Supreme Court of Idaho rejected the wife's argument, holding: "The statute makes no provision for alimony for the maintenance and support of children of the wife by a former marriage." *Id.* at [2].

Almost fifty years after *Smiley,* a New Jersey court decided *Skribner v. Skribner,* 153 N.J.Super. 374, 379 A.2d 1044 (1977). There, when the wife married the husband, she already had three children from an earlier marriage. 379 A.2d at 1044. One of the children had "special problems." *Id.* The parties separated a year and a half after their marriage. *Id.* The wife prayed for alimony. Addressing that issue, the court said:

> "She argues that her child support from her first husband is inadequate, particularly because she has a problem child, and this is a condition which existed at the time of her marriage; therefore, it should be considered by the court in an award to her. Clearly, [her present husband] has no obligation to

---

7. Stephanie testified a court ordered the father of her child to pay her child support of $160 per month "back in '92," but she has been unable to collect anything.

8. There is a Missouri case, *Donnelly v. Donnelly,* 708 S.W.2d 787 (Mo.App. E.D.1986), where a trial court awarded a wife *temporary* maintenance because she had a ten-year-old son by a prior marriage and needed daytime employment in order to look after him. *Id.* at 788. The wife testified she could not obtain full-time daytime employment as a respiratory

therapist. Upholding the award, the appellate court said: "The purpose of temporary maintenance is to ensure that the status quo is maintained until a final decree is entered." *Id.* Whether the husband argued that the temporary maintenance was tantamount to temporary child support for a child he had no duty to support cannot be determined from the opinion. It does appear from the opinion that the husband asserted the wife's "employability" rendered her ineligible for temporary maintenance. *Id.*

support these children. She should not be permitted to obtain through the back door what she cannot obtain directly. The obligation is that of her first husband."

*Id.* at 1045[1] (citations omitted). The court denied alimony.

This court finds no case anywhere in which a court ordered a husband to pay his wife maintenance (or alimony) in an amount that satisfied not only her reasonable needs but also part or all of the reasonable needs of a child (or children) she had by another man before the marriage. This court therefore holds the trial court erred in awarding Stephanie more maintenance than necessary to meet her reasonable needs. Accordingly, the maintenance award must be reduced to $112 per month.[9]

This court is not oblivious of Stephanie's burden in working, pursuing an education, and raising her child without financial help from the child's father. However, had Stephanie been the mother of four children—instead of one—by another man at the time she married Jay, could it reasonably be argued that Jay should pay Stephanie maintenance in an amount that met not only all of her reasonable needs but also some (or all) of the reasonable needs of all four children? According to the Idaho and New Jersey cases discussed earlier, the answer is no.

The man responsible for helping Stephanie support her child is the child's father, not Jay.[10] If the child's father was paying Stephanie enough child support to enable her to meet the child's reasonable needs, no one could seriously contend Jay should pay her $212.85 more per month in maintenance than she requires to meet her own reasonable needs. Said another way, Stephanie's lack of success in collecting child support from the child's father should not thrust a financial obligation on Jay that Jay would not otherwise have. This court therefore finds merit in Jay's first point insofar as it complains about the award of maintenance to Stephanie in excess of her reasonable needs.

■ Jay's second point attacks a finding by the trial court that Jay inflicted emotional and physical abuse on Stephanie throughout the marriage and that she would have completed her education to become a registered nurse but for such abuse. Although Jay does not explain how this adversely affected him in the outcome of the case, this court deduces his hypothesis is that the trial court granted Stephanie thirty-six months of maintenance in order to enable her to complete the education she would have gotten during the marriage but for Jay's misconduct.[11]

The answer to Jay's second point is that credibility of witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of any witness's testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988). Stephanie's testimony, which the trial court obviously believed, was more than sufficient to support

9. The amount of maintenance required to meet Stephanie's reasonable needs is $112.15 per month. However, the directions for Form No. 14, Missouri Court Rules, Vol. I (West Group 1999) pp. 405–23, which Rule 88.01 compels courts to use in calculating *child support,* provides that all amounts shall be rounded to the nearest dollar. This court concludes that for ease of calculation and record keeping by the parties and court officials, the same rule should be applied to Stephanie's maintenance. Consequently, this court "rounds" it to the nearest dollar.

10. In David B. Sweet, Annotation, *Stepparent's Postdivorce Duty to Support Stepchild,* 44 A.L.R.4th (1986) 520, § 4[d] p. 548 n. 53, the author states: "Missouri courts have agreed that there was no general duty for a stepparent to support a stepchild after divorce, but have disagreed on the rationale." The author discusses Missouri cases supporting that conclusion.

11. Monthly maintenance of limited duration is allowable in Missouri. In *York v. York,* 823 S.W.2d 45, 46–47[4] (Mo.App. E.D.1991), the appellate court affirmed a thirty-six month "rehabilitative maintenance" award for the purpose of enabling the wife to complete a law degree and become self-supporting.

the findings complained of in Jay's second point.

The judgment is affirmed except as to the amount of monthly maintenance awarded Stephanie, which is reversed. The case is remanded to the trial court with a directive to order Jay to pay Stephanie maintenance of $112 per month for thirty-six consecutive months commencing September 1, 1998.[12] Costs of this appeal are taxed half against Jay and half against Stephanie.

PARRISH and SHRUM, JJ., concur.

12. That was the due date of the first maintenance payment in the judgment.