Lewis RONE, Plaintiff/Appellant,

v.

James E. REEVES, Personal Representative of the Estate of B.F. Rogers, Deceased, Defendant/Respondent.

No. 22885.

Missouri Court of Appeals,
Southern District,
Division Two.

May 2, 2000.

Rehearing Denied May 23, 2000.

Terry M. McVey, Crow, Reynolds, Shetley & McVey, LLP, Kennett, for Appellant.

W. Edward Reeves, Ward & Reeves, Caruthersville, for Respondent.

KERRY L. MONTGOMERY, Presiding Judge.

Lewis Rone (Appellant) appeals the trial court's denial of his petition seeking damages and specific performance in conjunction with a contract for the sale of land. Appellant claims the trial court erred in finding that the land descriptions in the contract were indefinite and unenforceable and in failing to grant specific performance of the contract.

The standard of review of this court-tried case is governed by the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We shall affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32; *In re Estate of Looney*, 975 S.W.2d 508, 513 (Mo.App.1998).

In addition, we accept as true the evidence and inferences therefrom that support the trial court's judgment and disregard contrary evidence. *Crawford v. Detring*, 965 S.W.2d 188, 189 (Mo.App. 1998). "We keep in mind that a trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Id.* We present the facts in accordance with these guidelines.

Appellant owns and farms land in and around Portageville, Missouri. In the early months of 1994, a corporation approached Appellant seeking mineral rights to remove sand from his land. The corporation indicated that it would only be interested in making a deal with Appellant if it were assured a transportation right-of-way across the neighboring land owned by B.F. "Hot" Rogers (Respondent).[1]

Thereafter, Appellant called Respondent to discuss a potential right-of-way and to set up a meeting at the law office of Jim DeReign. At this meeting, Respondent said he was not interested in granting the right-of-way. According to Appellant, Respondent instead made a "take it or leave it offer" for Appellant to purchase all of Respondent's land in the north end of Pemiscot County and all of his land in New Madrid County. Appellant expressed interest in the offer, but the parties did not discuss specifics such as the purchase price or the amount of acreage involved at this meeting.

After the initial meeting, Appellant and Respondent exchanged phone calls every week or ten days. Respondent explained that his attorney was out of town so he had been unable to get a contract drafted. During this time, Appellant investigated the extent of Respondent's land holdings in Northern Pemiscot County and in New Madrid County. Respondent consulted ASCS maps and plat maps to determine the location and total number of acres of Respondent's holdings. Based upon these sources, Appellant prepared a document showing the land that he believed Respondent intended to sell.

Appellant testified that eventually the parties had a telephone conversation in which Respondent offered to sell the land for $1100 per acre. The parties discussed the fact that Respondent had only an undivided one-half interest in some of the land. They agreed to meet at Mr. DeReign's office on May 6, 1994, to finalize the terms of the sale.

At the May meeting, Appellant brought the document showing what he believed to

---

1. Mr. Rogers died after the inception of this case. Although the personal representative of his estate is the actual Respondent in this case, we will continue to refer to Mr. Rogers as such for simplicity.

be the real estate Respondent intended to sell. Respondent looked over the document and made adjustments, including adding a ninety-acre farm that the plat maps failed to show as his property. The parties discussed the number of acres Respondent owned in each parcel of land. Respondent then indicated that Mr. DeReign should prepare a contract. They again went over the maps and indicated the parcels and number of acres before arriving at a final purchase price.

While the parties waited, Mr. DeReign drafted a document entitled "Option to Purchase Real Estate." The document purported to give Appellant the right to purchase 834 acres of real estate owned by Respondent for $1100 per acre, for a total price of $917,400. The document described the real estate as located in Pemiscot and New Madrid Counties, specifically referring to the land as follows:

Section 14, Township 20 North, Range 13 East–Pemiscot 160 acres individually

Section 14, Township 20 North, Range 13 East–Pemiscot 180 acres co-tenant

Section 15, Township 20 North, Range 13 East–Pemiscot 40 acres co-tenant

Section 13, Township 20 North, Range 13 East–Pemiscot 80 acres individually

Section 22, Township 20 North, Range 13 East–Pemiscot 80 acres individually

Section 19, Township 21 North, Range 14 East–New Madrid 94 acres individually

Section 28, Township 21 North, Range 14 East–New Madrid 99 acres individually

Section 29, Township 21 North, Range 14 East–New Madrid 101 acres individually

Mr. DeReign admitted the document did not contain complete legal descriptions of the real estate but said he believed the descriptions were sufficient for the agreement. He testified that his goal was to provide a "thumbnail sketch" of the property, with the complete legal descriptions to be provided when the sale was closed. Both parties signed the document. Respondent left the office briefly and returned with his wife's signature on the document. Appellant paid $5000 in consideration for the option to purchase the land. Shortly thereafter, Respondent's attorney, Jim Ed Reeves, contacted Appellant and asked him to come to his office. Mr. Reeves attempted to give Appellant a $5000 check from Respondent in order to cancel the option. Appellant refused the check. On June 8, 1994, Appellant sent a certified letter notifying Respondent that he was exercising the option to purchase the land.

The sale was never completed. On February 15, 1995, Appellant filed a Petition for Specific Performance and Damages. A trial was held on the matter on December 16, 1997. Both Appellant and Mr. DeReign testified that they understood that Respondent intended to sell Appellant all of his land in Northern Pemiscot County and in New Madrid County even though the contract did not refer to "all" of Respondent's land. Mr. DeReign further testified that he believed the contract accurately reflected the parties' wishes as expressed to him.

Both parties submitted exhibits containing the complete legal descriptions of all land owned by Respondent in Northern Pemiscot County and New Madrid County. These exhibits showed several discrepancies between the number of acres in each tract as shown in the contract and the actual acreage owned by Respondent:

| Tract | Acres in Contract | Acres Owned |
|---|---|---|
| S14–T20N–R13E | 340 | 526 |
| S15–T20N–R13E | 40 | 80 |
| S13–T20N–R13E | 80 | 77 |
| S22–T20N–R13E | 80 | 81 |
| S19–T21N–R14E | 94 | 90 |
| S28–T21N–R14E | 99 | 112.7[2] |
| S29–T21N–R14E | 101 | 101.81 |

**2.** The evidence shows that there is no Section 28 in Township 21 North, Range 14E. As shown by the exhibits, Respondent owned 112.7 acres in another section and township according to Survey 2934. Appellant sug-

On February 19, 1999, the trial court entered a judgment denying the relief Appellant requested. The trial court determined that the contract prepared by Mr. DeReign did not identify the land to be conveyed in a manner sufficient to satisfy the requirements of § 432.010,[3] the statute of frauds. The court found that "the evidence established that [Respondent] owned more land in some sections and townships than described in the contract." The court also noted that "[t]he contract refers to a non-existent section in New Madrid County." In its findings, the court also emphasized the fact that Respondent only had a partial ownership interest in some of the described land.

The trial court concluded, "The contract on its face neither sufficiently provides the means for determining the parties' intention as to each parcel of the land to be conveyed nor on its face refers to then-existing external evidence which might be utilized in determining the parties' intention and applying the description contained within the contract." After determining the contract was not legally enforceable, it denied Appellant's request for specific performance and damages.

Appellant raises two points on appeal. In Appellant's first point he complains the trial court erred in concluding the contract was unenforceable because the real estate involved was not sufficiently identified. In his second point, Appellant maintains the trial court erred in denying his claim for specific performance of the contract.

In Point I, Appellant contends the trial court erroneously applied the law in finding the contract was unenforceable because the "rough description" of the property in the contract merely provided the "key" to the identification of the land to be conveyed and could be properly clarified by parole evidence. Appellant suggests that the land descriptions in the contract "coincided with all of the property owned

by [Respondent] in each particular section and ... it was clear from the testimony that the intention of the parties was that [Respondent] wanted to sell all of his property in North Pemiscot County and New Madrid County."

According to § 432.010, any contract for the sale of land must be in writing and signed by the parties. A writing satisfies the statute of frauds if it sets forth the essential terms of a contract. *Looney*, 975 S.W.2d at 515. There are five required contract provisions including: "(1) the parties to the contract; (2) the subject matter; (3) the promises made by both parties; (4) the price; and (5) consideration." *Venture Stores, Inc., v. Pacific Beach Co., Inc.*, 980 S.W.2d 176, 180 (Mo. App.1998).

The subject matter of the contract is the element at issue in the present case. Appellant argues that the trial court erred in finding the contract terms indefinite because parole evidence could be used to specifically identify the real estate in question based on the principle of "that is certain which can be made certain." *See Seabaugh v. Sailer*, 679 S.W.2d 924, 926 (Mo.App.1984).

It is true that Missouri courts have recognized that a writing, as required by the statute of frauds, "need not be contained in a single document." *Crawford*, 965 S.W.2d at 192. "A writing need not be an explicit and complete contract, and the terms therein need not be definite, as long as the substance of the agreement appears from the writing." *Looney*, 975 S.W.2d at 515. It is also true that "land need not be 'fully and accurately described as long as the writing affords means whereby identification may be made perfect and certain by parol evidence.'" *Crawford*, 965 S.W.2d at 193 (quoting *Ahrens v. Dodd*, 863 S.W.2d 611, 613 (Mo. App.1992)).

gests the 99–acre tract shown in the contract actually covered the 112.7–acre tract.

3. Statutory references are to RSMo 1994 unless otherwise noted.

Appellant concedes that the descriptions of the land in the contract "are not complete legal descriptions of the real estate . . . ." He suggests that the parole evidence, including the exhibits showing the real estate Respondent actually owned in Northern Pemiscot and New Madrid Counties and the testimony of Appellant and Mr. DeReign that Respondent intended to sell all of his land in the aforementioned counties, was sufficient to clarify the terms of the contract. We disagree.

Appellant bases his argument on the erroneous assertion that the exhibits at trial showed that the acreage described in the contract "coincided" with all of the property owned by Respondent in Northern Pemiscot County and New Madrid County. Appellant maintains that the difference between the number of acres shown in the contract and the actual number of acres owned is "virtually insignificant."

This statement ignores the fact that one parcel alone encompasses 186 acres more than the number indicated by the contract. Another parcel contains 40 acres more than the number stated on the contract's face. There is at least a 240–acre difference between the number of acres Respondent owned and the number stated in the contract. Although Appellant suggests that Respondent only owned, and therefore only intended to sell, an undivided one-half interest in these tracts, this would not appear to explain the discrepancies. Furthermore, one parcel as identified by the contract does not even exist.

In addition to the trial exhibits, Appellant heavily relies on the testimony of Mr. DeReign and his own testimony to show that Respondent intended to sell "all of his land" in Northern Pemiscot County and New Madrid County. He claims that based upon this testimony, the trial court could merely look at the exhibits showing the land Respondent actually owned in these areas and infer that the contract was intended to sell all of that land.

We must defer to the trial court on questions of credibility of the witnesses. *Warren v. Tom,* 946 S.W.2d 754, 757 (Mo. App.1997). The trial court is free to believe or disbelieve all, part or none of the testimony of any witness. *Crawford,* 965 S.W.2d at 189. The trial court did not make a specific finding as to the credibility of Appellant or Mr. DeReign. However, "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *In re Marriage of Hoffman,* 996 S.W.2d 797, 799 (Mo.App.1999); Rule 73.01(a)(3). Accordingly, we must assume the trial court did not believe the testimony that Respondent intended to sell "all of his land" in Northern Pemiscot County and New Madrid County.

Based upon the discrepancies between the number of acres shown in the contract and the number of acres Respondent actually owned, and based upon our deference to the trial court on matters of witness credibility, we cannot say the trial court erred in determining the land descriptions in the contract were not sufficiently specific to satisfy the statute of frauds. Point I is denied.

In his second point on appeal, Appellant claims the trial court erred in failing to grant specific performance of the contract. Based upon our finding in Point I that no valid contract exists, Point II is moot. The judgment of the trial court is affirmed.

GARRISON, C.J., and BARNEY, J., concur.